[918 NE2d 927, 890 NYS2d 415]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MICHAEL J. BROWN, Appellant.

Argued October 14, 2009; decided November 19, 2009

## POINTS OF COUNSEL

*Appellate Advocates*, New York City (*Steven R. Bernhard* and *Lynn W.L. Fahey* of counsel), for appellant. I. Appellant was denied his Sixth Amendment right to the effective assistance of counsel by his attorney's failure to renew his pretrial dismissal motion when trial testimony revealed information at odds with the prosecution claim that "reasonable diligence" had been utilized to ascertain the assailant's identity so as to extend the statute of limitations. (*Strickland v Washington*, 466 US 668; *People v Baldi*, 54 NY2d 137; *People v Turner*, 5 NY3d 476; *People v Caban*, 5 NY3d 143; *People v Bennett*, 29 NY2d 462; *People v LaBree*, 34 NY2d 257; *People v Droz*, 39 NY2d 457; *People v Hobot*, 84 NY2d 1021; *Matter of Chad H.*, 278 AD2d 601; *People v Grey*, 257 AD2d 685.) II. The introduction of a DNA report from an outside laboratory, without testimony from anyone employed by, or personally familiar with, the procedures and protocols used by that lab in creating the report, violated appellant's right to confrontation and New York's foundational requirement for the report's admission as a business record. (*Crawford v Washington*, 541 US 36; *Davis v Washington*, 547 US 813; *People v Rawlins*, 10 NY3d 136; *People v Kennedy*, 68 NY2d 569; *People v Cratsley*, 86 NY2d 81; *Johnson v Lutz*, 253 NY 124; *Standard Textile Co. v National Equip. Rental*, 80 AD2d 911; *People v Grogan*, 28 AD3d 579; *People v Jenkins*, 55 AD3d 850; *People v Prado*, 4 NY3d 725.)

*Richard A. Brown, District Attorney*, Kew Gardens (*William H. Branigan* and *John M. Castellano* of counsel), for respondent. I. The Appellate Division correctly held that the subcontractor's lab report, consisting of raw data of a single DNA

sample, was properly admitted in evidence. (*People v Rawlins,* 10 NY3d 136; *People v Freycinet,* 11 NY3d 38; *Crawford v Washington,* 541 US 36; *Davis v Washington,* 547 US 813; *People v Cratsley,* 86 NY2d 81; *People v Gray,* 86 NY2d 10; *People v Hawkins,* 11 NY3d 484; *Standard Textile Co. v National Equip. Rental,* 80 AD2d 911; *People v Kennedy,* 68 NY2d 569.) II. Defense counsel provided effective representation. (*People v Riley,* 70 NY2d 523; *People v Ramos,* 99 NY2d 27; *People v Parilla,* 8 NY3d 654; *People v Hobot,* 84 NY2d 1021; *People v Benevento,* 91 NY2d 708; *People v Brown,* 7 NY2d 359; *People v Rivera,* 71 NY2d 705; *People v Baldi,* 54 NY2d 137; *People v De Mauro,* 48 NY2d 892; *People v Jackson,* 52 NY2d 1027.)

**OPINION OF THE COURT**

CIPARICK, J.

The main issue raised on appeal is whether defendant's Sixth Amendment right to confrontation was violated by the introduction of a DNA report processed by a subcontractor laboratory to the Office of the Chief Medical Examiner (OCME) through the testimony of a forensic biologist from OCME. Because the report is "nontestimonial," we hold that its admission did not constitute a *Crawford* violation (*see Crawford v Washington,* 541 US 36 [2004]; *Melendez-Diaz v Massachusetts,* 557 US —, 129 S Ct 2527 [2009]).

I

The People alleged that on the morning of August 6, 1993, as the nine-year-old female victim was walking to her friend's apartment in Queens, defendant followed her inside the building to the fifth floor. Placing his hand over her mouth, he accosted her and brought her to the rooftop of the building. He then used a cigarette lighter to burn a plastic hair clip into her arm and threatened her if she resisted his sexual advances. When she did resist, he picked up a brick and struck her in her head, temporarily knocking her unconscious. Upon awakening, she wore only a t-shirt that was covered in blood, and she had a footprint on her face from being kicked. She fled downstairs to her friend's apartment and was taken to a local hospital.

Police interviewed the victim at the hospital. She told them that she did not know her attacker, nor was she able to describe him with any specificity, other than he was an African-American male in his mid-thirties. A canvas of the area yielded no additional evidence.

The hospital prepared a rape kit that was later sent to OCME. Due to a substantial backlog,[1] OCME was unable to perform DNA testing on the rape kit at that time. On August 2, 2002, almost nine years after the crime, OCME received additional funding to address the backlog. It sent the rape kit, along with 225 others, to Bode Technology, one of at least three of its subcontracting laboratories, for testing. Bode is a private laboratory that is fully accredited. Shortly thereafter, Bode isolated a male DNA specimen from the rape kit, reflecting a string of numbers of all 13 areas of DNA. Bode further produced a DNA report containing machine-generated raw data, graphs and charts of the male specimen's DNA characteristics.

Subsequently, the DNA characteristics were entered into the Combined DNA Index System. By June 2000, defendant's DNA specimen had been recorded in the national database by Maryland police, upon his arrest for an unrelated matter. In February 2003, a routine search of the database registered a "cold hit," linking defendant's DNA to the profile found in the victim's rape kit. A detective from the Queens Special Victims Squad took a DNA sample from defendant and delivered it to OCME. Thereafter, a forensic biologist/criminalist from OCME compared defendant's DNA characteristics to the specimen from the victim's rape kit. Based upon this analysis, she determined that the profiles were a match occurring in one out of one trillion males.

Defendant was charged with two counts of sodomy in the first degree, kidnapping in the second degree, three counts of assault in the second degree and endangering the welfare of a child. Before trial, he moved to dismiss the indictment on the ground that the statute of limitations had run, arguing that the People could not rely upon the five-year extension under CPL 30.10 (4) (a), where the whereabouts of the defendant are unknown and unascertainable, because police failed to exercise "reasonable diligence" in locating him. Supreme Court denied the motion, holding that the delay was caused by the child victim's inability to identify her attacker and that defendant was arrested based upon DNA evidence found years later.

At trial, the victim provided a more ample description of her attacker, calling him "muscular." She also testified that he

---

1. In 1994, the New York State Legislature created a DNA data bank. An amendment of the statute provided for retroactive application. Thereafter, the New York City Police Department began a backlog project, and it submitted over 14,000 sexual assault kits to laboratories for DNA testing.

asked her about members of her family, including her "Uncle Sol." Defense counsel did not renew the motion to dismiss the indictment as time-barred based upon this additional evidence provided at trial by the victim.

The People called as a witness the forensic biologist/criminalist from OCME who analyzed defendant's DNA profile. She testified that she supervised other criminalists at OCME, reviewed their reports and findings, and oversaw quality control management to ensure the laboratory's procedures met appropriate standards. She stated that she had personally performed thousands of DNA tests and reviewed many more. The court granted the People's application to have her deemed an expert in DNA testing and forensic biology. The witness then testified in depth as to the characteristics of DNA and about the testing protocols for all accredited crime laboratories in the United States, including OCME and Bode.

The People then moved to introduce the DNA report, containing a profile of the specimen taken from the victim's rape kit, as a business record. Defense counsel objected, claiming that any documents generated by Bode were "testimonial evidence" that would violate defendant's Sixth Amendment right to confrontation, unless the analyst who performed the test was present to testify. Defense counsel further asserted that the witness was not familiar with Bode's quality assurance and how this particular test was performed. The People responded that the report contained merely raw data and was not testimonial, and that the witness herself had performed the analysis in comparing defendant's profile with the profile of the DNA found in the rape kit. The People cited to *People v Cratsley* (86 NY2d 81 [1995]) and *People v Kennedy* (68 NY2d 569 [1986]), arguing that a business record can be introduced by a person who is not a custodian of records, provided that the other criteria for the business record exception are established. Initially, the court denied the application to admit the DNA report.

The OCME witness then testified that the Bode report consisted merely of raw data and contained no conclusions other than noting that there was a male specimen found in the victim's rape kit. She stated that she drew her own scientific conclusions from analyzing the data and defendant's DNA profile. She further noted that she was familiar with Bode's procedures and protocols. The court then admitted the report

into evidence.[2] Subsequently, the jury convicted defendant of two counts of first-degree sodomy, two counts of second-degree assault and endangering the welfare of a child.

The Appellate Division affirmed the conviction, concluding that introduction of the DNA report did not violate defendant's Sixth Amendment confrontation right,[3] and further that there was no statute of limitations violation because defendant was not a suspect until the DNA evidence linked him to this crime (*see* 50 AD3d 1154 [2008]). A Judge of this Court granted defendant leave to appeal (11 NY3d 830 [2008]), and we now affirm.

## II

The Sixth Amendment to the United States Constitution guarantees a defendant the right to be "confronted with the witnesses against him." This provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination" (*Crawford*, 541 US at 53-54). Only statements that are "testimonial" implicate the Sixth Amendment right to confront witnesses (*see Davis v Washington*, 547 US 813, 821 [2006]). In *Crawford*, the Court explained that "[t]estimony" is "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact" (541 US at 51 [internal quotation marks and citation omitted]). It includes "*ex parte* in-court testimony" and "extrajudicial statements," such as "affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially" (*id.*).

In *Melendez-Diaz*, the United States Supreme Court recently held that "certificates of analysis" from a state laboratory concluding two essential elements of the charged crime, that the seized substance was cocaine and of a certain weight, without any testimony from the analysts who made such conclusions, violated defendant's Sixth Amendment right to confront witnesses (557 US at —, 129 S Ct at 2532). The certificates

---

**2.** The exhibit contains 72 pages. The Bode documents are 29 pages and they contain graphs, charts, a description of the process used to test the DNA and a statement identifying whether the profile was of a male, female or was inconclusive.

**3.** It should be noted that the Appellate Division decision was entered in April 2008, well over a year before the Supreme Court of the United States decided *Melendez-Diaz*.

were sworn to by the analysts before a notary public and were created for the "sole purpose" of being introduced in court during the prosecution of the case (*id.*). Under these circumstances, the Court held that the affidavits were "testimonial statements" and the analysts were "witnesses" for purposes of the Sixth Amendment (*id.*). The Court stated:

> "The documents at issue here, while denominated by Massachusetts law certificates, are quite plainly affidavits: declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths. They are incontrovertibly a solemn declaration or affirmation made for the purpose of establishing or proving some fact. The fact in question is that the substance found in the possession of Melendez-Diaz and his codefendants was, as the prosecution claimed, cocaine—the precise testimony the analysts would be expected to provide if called at trial. The certificates are functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination" (557 US at —, 129 S Ct at 2532 [internal quotation marks and citations omitted]).

In *People v Meekins* (10 NY3d 136 [2008]), a pre-*Melendez-Diaz* case, we held that the introduction of a DNA report from a private subcontractor laboratory that tested the victim's rape kit was not a *Crawford* violation, where the technicians who performed the test did not testify at trial. We concluded that the reports were not "testimonial" because the technicians merely recorded neutral testing procedures and the "graphical DNA test results, standing alone, shed no light on the guilt of the accused in the absence of an expert's opinion that the results genetically match a known sample," and such an expert did testify at the trial (*id.* at 159). In the companion case, *People v Rawlins*, however, we held that the introduction of a fingerprint analysis was "testimonial" because it was prepared by police solely to be entered at the subsequent trial against the defendant, and it was therefore offered upon a purely accusatory basis, to establish defendant's identity at trial (*see id.* at 157). We have noted several other factors that may be relevant in considering whether a document is "testimonial" in a *Crawford* analysis: (1) whether the agency that produced the record is independent of law enforcement; (2) whether it reflects objective facts at the time of their recording; (3) whether the report has

been biased in favor of law enforcement; and (4) whether the report accuses the defendant by directly linking him or her to the crime (*see People v Freycinet*, 11 NY3d 38, 41 [2008]).

⬛ Here, unlike *Melendez-Diaz*, the People called the forensic biologist who conducted the actual analysis at issue, linking defendant's DNA to the profile found in the victim's rape kit. She testified that she had personally examined the Bode file; she interpreted the profile of the data represented in the machine-generated graphs; and she made the critical determination linking defendant to this crime. She also stated that she was familiar with the procedures and protocols used by Bode, and defendant could have challenged such claim on cross-examination.

The Bode report, furthermore, was not "testimonial" under such circumstances because it consisted of merely machine-generated graphs, charts and numerical data. There were no conclusions, interpretations or comparisons apparent in the report since the technicians' use of the typing machine would not have entailed any such subjective analysis. These technicians would not have been able to offer any testimony other than how they performed certain procedures. As the Court made clear in *Melendez-Diaz*, not everyone "whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case" (557 US at — n 1, 129 S Ct at 2532 n 1). The technicians who generated this report fit the definition of an "analyst" under *Meekins*, where we held that the DNA subcontractor's report consisted of merely "raw data . . . in the form of nonidentifying graphical information" (10 NY3d at 158-159).

Finally, we see no merit to defendant's contention that the results of the Bode procedures could have been tainted by a pro-law-enforcement bias to inculpate defendant. First, Bode's report was conducted before defendant was ever a suspect in this case, thereby eliminating any pro-law-enforcement benefit to manipulating the results. Second, OCME and Bode are not law enforcement entities; they are scientific laboratories that work independently from the District Attorney and New York City Police Department. Third, the OCME witness testified that technician incompetence would not have led to defendant being accused. Any contamination resulting from mishandling the evidence or an error in using the equipment would result in blank spots, but

would not otherwise alter the data to form an erroneous DNA profile. Our holding is thus consistent with *Melendez-Diaz,* as the Bode report is "nontestimonial" and the OCME criminalist testified that she was familiar with Bode's procedures, protocols and accreditation.

■ We additionally find that the OCME witness's testimony provided a sufficient foundation for introducing the Bode documents under our business records rule, CPLR 4518. In *People v Cratsley* (86 NY2d 81, 89 [1995]), we held that, under limited circumstances, a witness who is familiar with the practices of a company that produced the records at issue, and who generally relies upon such records, may have the requisite knowledge to meet the CPLR requirements for the admission of a business record, provided that the witness can also attest that (1) the record was made in the regular course of business; (2) it was the regular course of business to make such record; and (3) the record was made contemporaneously with the relevant event, thereby assuring its reliability.

Here, the forensic biologist testified that she relied on the documents at issue as a matter of practice; she reviewed them and used them in conducting her own DNA analysis. OCME entrusted Bode for a substantial amount of testing, including 225 rape kits. Further, the witness testified that she was familiar with the procedures and protocols used by Bode and that such procedures were up to standard. She finally testified as to the reliability of the testing procedures Bode used to generate this report, and as to Bode's duty to create such records, that it was made contemporaneously, and that the record was made in the regular course of business.

■ Defendant's final claim is that his right to effective assistance of counsel was violated when his attorney did not raise the statute of limitations claim again, after the victim provided a more ample description of her attacker during her trial testimony. Because there is no support for the notion that defendant would have been identified at an earlier date as a result of this additional information (had the police in fact known about it) and there was no evidence that police failed to act with "reasonable diligence" in investigating this crime (*see* CPL 30.10 [4] [a]), we conclude that defendant's motion would have been meritless, and thus his counsel was not ineffective in failing to restate this claim.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order affirmed.