■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARK DAIL, Also Known as WAYNE WILLIAM, Appellant. [894 NYS2d 78]—

The Supreme Court properly declined to suppress DNA evidence derived from a buccal swab. The evidence presented at the suppression hearing supports the court's conclusion that the defendant voluntarily agreed to give the police a saliva sample for testing (*see People v Gonzalez,* 39 NY2d 122, 128 [1976]; *People v Brewster,* 48 AD3d 696 [2008], *cert denied* 555 US —, 129 S Ct 265 [2008]; *People v Edwards,* 46 AD3d 698, 699 [2007]). While the defendant was in custody, he had been at the precinct for less than one hour when the saliva sample was requested, and only two officers were present in the interview room with him (*see People v Quagliata,* 53 AD3d 670, 672 [2008]; *People v Edwards,* 46 AD3d at 699). The defendant, who was not a novice to the criminal justice system, also signed a form which expressly informed him of his right to refuse consent, and was fully cooperative with the officers (*see People v Quagliata,* 53 AD3d at 672; *People v Knudsen,* 34 AD3d 496 [2006]; *People v Maldonado,* 184 AD2d 531, 532 [1992]; *People v Del Valle,* 149 AD2d 610 [1989]; *People v Credidio,* 141 AD2d 661, 662 [1988]). Considering the totality of the circumstances, the defendant's consent was voluntary and not the product of coercion (*see People v Quagliata,* 53 AD3d at 672; *People v Edwards,* 46 AD3d at 699; *see generally People v Gonzalez,* 39 NY2d at 128).

Furthermore, the defendant's Sixth Amendment right to confront his accusers was not violated by the admission of lab reports generated by employees of the Nassau County Medical Examiner's Office (hereinafter the Medical Examiner's Office), who recorded the results of DNA tests performed on the defendant's saliva and items recovered from the burglarized residences. A foundation for the admission of these reports as business records was established through the testimony of a forensic geneticist employed by the Medical Examiner's Office (*see* CPLR 4518 [a]; *People v Brown,* 13 NY3d 332, 341 [2009]; *People v Meekins,*

34 AD3d 843, 844-845 [2006], *affd* 10 NY3d 136, 158-160 [2008], *cert denied* 557 US —, 129 S Ct 2856 [2009]; *People v Grogan,* 28 AD3d 579, 581 [2006]; *People v Baylor,* 25 AD3d 562 [2006]). Moreover, business records "are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial" (*Melendez-Diaz v Massachusetts,* 557 US —, —, 129 S Ct 2527, 2539-2540 [2009]; *see Crawford v Washington,* 541 US 36, 56 [2004]). Here, the subject lab reports were prepared in the ordinary course of business of the Medical Examiner's Office, a scientific laboratory independent from the Nassau County District Attorney and the Nassau County Police Department (*see People v Brown,* 13 NY3d at 341). Moreover, the reports consisted of contemporaneously recorded objective facts which did not, standing alone, link the defendant to the crime (*see People v Freycinet,* 11 NY3d 38, 41, 42 [2008]; *People v Meekins,* 10 NY3d at 149-150). Rather, the critical determination linking the defendant to the crimes was made by the forensic geneticist who testified, based upon her analysis of data in the lab reports, that the defendant's DNA was present on items recovered from the burglarized residences. Accordingly, the lab reports were not testimonial in nature, and their admission through the forensic geneticist's testimony did not violate the defendant's right to confrontation (*see People v Brown,* 13 NY3d at 340; *People v Freycinet,* 11 NY3d at 41-42; *People v Meekins,* 10 NY3d at 158-160).

The court did not err in denying the defendant's request to individually question all jury members about whether they could remain impartial after one juror saw the defendant being escorted down a hallway in handcuffs during a recess. The court granted the defendant's request to discharge the juror who had seen him in handcuffs, and there is no indication in the record that any other juror also might have so viewed him (*see People v Malinowski,* 152 AD2d 710 [1989]). In any event, the possibility that other jurors may have briefly and inadvertently seen the defendant in handcuffs provides no basis for reversal (*see People v Harper,* 47 NY2d 857, 858 [1979]; *People v Montgomery,* 1 AD3d 984 [2003]; *People v Fioravantes,* 229 AD2d 784, 785-786 [1996]; *People v Anderson,* 175 AD2d 806 [1991]).

The sentences imposed were not excessive (*see People v Suitte,* 90 AD2d 80 [1982]; *see also People v O'Brien,* 52 AD3d 535, 537 [2008]).

The defendant's remaining contentions are unpreserved for appellate review and, in any event, are without merit. Dillon, J.P., Eng, Belen and Hall, JJ., concur.