■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEFFREY D. GIBSON, Appellant. [902 NYS2d 289]—

Appeal from a judgment of the Supreme Court, Erie County (John L. Michalski, A.J.), rendered March 19, 2008. The judgment convicted defendant, upon a jury verdict, of robbery in the first degree.

It is hereby ordered that the judgment so appealed from is affirmed.

Memorandum: On appeal from a judgment convicting him following a jury trial of robbery in the first degree (Penal Law § 160.15 [4]), defendant contends that Supreme Court erred in refusing to suppress evidence establishing that his DNA matched the DNA obtained from a knitted cap found a short distance from the scene of the robbery. According to defendant, his indelible right to counsel was violated because, despite knowing that defendant was in custody on an unrelated charge for which he was represented by counsel, a police investigator offered defendant a cigarette for the purpose of obtaining DNA evidence from his saliva in an effort to link him to the instant robbery. Defendant was in custody at the police station at that time pursuant to a bench warrant issued on the unrelated charge. Defendant had asked to speak to a certain investigator known to him from prior dealings, and the investigator offered defendant the cigarette during their conversation in the investigator's office. At the time, the investigator suspected defendant of having committed the robbery at issue herein, and the police had DNA evidence from the knitted cap worn by the perpetrator. Defendant smoked the cigarette and left its remains in an ashtray at the completion of the conversation. A DNA test later showed that defendant's DNA from the cigarette matched that obtained from the cap, and defendant was thereafter charged with the commission of the robbery.

Because formal proceedings had not been commenced against defendant with respect to the robbery charge, defendant's right to counsel arose from the unrelated charge pursuant to the

Fifth Amendment and its state counterpart (*see Miranda v Arizona*, 384 US 436, 466 [1966]; *People v Settles*, 46 NY2d 154, 161 [1978]). It is well established that the rights set forth in the Fifth Amendment do not apply to evidence that is not "testimonial or communicative" in nature (*Schmerber v California*, 384 US 757, 761 [1966]; *see People v Hawkins*, 55 NY2d 474, 482 [1982], *cert denied* 459 US 846 [1982]). As the Court of Appeals has explained, "[e]vidence is 'testimonial or communicative' when it reveals a person's subjective knowledge or thought processes" (*People v Hager*, 69 NY2d 141, 142 [1987]). The Fifth Amendment thus does not protect an accused from being compelled to produce " 'real or physical evidence' " (*Pennsylvania v Muniz*, 496 US 582, 582 [1990], quoting *Schmerber*, 384 US at 764). For example, a person suspected of driving while intoxicated is not required to receive *Miranda* warnings before being asked by the police to submit to field sobriety tests or a chemical test to determine his or her blood alcohol content (*see People v Berg*, 92 NY2d 701, 703 [1999]; *Hager*, 69 NY2d at 142), nor does the taking of a handwriting sample from a suspect in custody who refuses to answer questions in the absence of counsel run afoul of the Fifth Amendment (*see Gilbert v California*, 388 US 263, 266 [1967]). We conclude that the DNA from defendant's saliva is analogous to the blood alcohol content of a blood sample, and thus can be viewed only as real or physical evidence because it is not testimonial or communicative in nature under the definition set forth in *Hager* (*see e.g. Wilson v Collins*, 517 F3d 421, 430 [2008]; *United States v Zimmerman*, 514 F3d 851, 855 [2007]).

Inasmuch as the Fifth Amendment right of defendant against self-incrimination was not violated by the surreptitious seizure of his saliva by the police, it necessarily follows that his derivative right to counsel under the Fifth Amendment was not thereby violated either. Indeed, we note that the Supreme Court in *Schmerber* held that a petitioner whose blood was drawn without his consent and against the advice of his attorney was not deprived of his right against self-incrimination or his right to counsel. The Court in *Schmerber* reasoned, inter alia, that the evidence in question was not testimonial or communicative in nature and thus that the petitioner's Fifth Amendment rights were not violated (384 US at 765). The Court further reasoned that, because the petitioner was not entitled to assert a privilege against self-incrimination, he also was not denied his right to counsel. The Court wrote that, "[s]ince [the] petitioner was not entitled to assert the privilege [against self-incrimination], he has no greater right because counsel erroneously advised him that he could assert it" (*id.* at 766). Although the right to

counsel under the New York State Constitution is broader than that under the Federal Constitution (*see People v Ramos*, 99 NY2d 27, 33 [2002]), New York jurisprudence parallels federal law with respect to the scope of Fifth Amendment protection (*see Hawkins*, 55 NY2d at 482). We thus conclude that the police did not violate defendant's right to counsel by obtaining defendant's DNA from the saliva on the discarded cigarette.

As further support for our determination, we note that, were we to agree with the dissent, a person stopped by the police on suspicion of driving while intoxicated could refuse without consequence to submit to field sobriety tests and a chemical test if he or she happened to be represented by counsel on pending charges or, indeed, if he or she simply asked for an attorney. Because under those circumstances the right to counsel previously would have attached or would thereby be invoked upon the request for an attorney, the refusal of the suspect to consent to the tests could not be used against him or her at trial, thus making it virtually impossible in many cases for the prosecution to obtain a conviction. Although the suspect, by virtue of operating a vehicle in New York State, may under certain conditions be deemed to have consented to a chemical test (*see* Vehicle and Traffic Law § 1194 [2] [a] [1]), state law cannot, of course, override constitutional provisions, including the right to counsel. We thus cannot agree with the dissent's conclusion, which, in our view, stems from an overly broad interpretation of the right to counsel in the Fifth Amendment context and could have far-reaching consequences.

We reject the further contentions of defendant that the evidence is legally insufficient to support the conviction and that the verdict is against the weight of the evidence. Clothing worn by the perpetrator was found by the police in the backyard of a residence approximately 200 yards from the scene of the robbery, including the knitted cap with the DNA matching that of defendant. In addition, defendant's girlfriend was observed near the scene of the robbery shortly after the crime was committed, and she and defendant were seen walking together approximately a half mile from the crime scene less than an hour later. Finally, defendant matched the general description of the perpetrator, whose face was covered by clothing during the robbery. Viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]), we conclude that there is a valid line of reasoning and permissible inferences to support the jury's finding that defendant committed the robbery based on the evidence presented at trial (*see generally People v Bleakley*, 69 NY2d 490, 495 [1987]). In addi-

tion, viewing the evidence in light of the elements of the crime as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).

Finally, we have reviewed defendant's remaining contentions and conclude that none warrants reversal.

All concur except Green, J., who dissents and votes to reverse in accordance with the following memorandum.

Green, J. (dissenting). I respectfully dissent. I cannot agree with the majority that Supreme Court properly refused to suppress DNA evidence obtained from defendant because, as defendant correctly contends, that evidence was obtained in violation of his right to counsel. The record of the suppression hearing establishes that, when that evidence was obtained, defendant was in custody on unrelated charges and was represented by counsel on those charges. Consequently, he could not be interrogated on any matter, " 'whether related or unrelated to the subject of the representation' " (*People v Burdo*, 91 NY2d 146, 149 [1997]). The investigating detective was aware that defendant was represented by counsel, but nevertheless devised a scheme to obtain DNA evidence from him in counsel's absence. The detective was acquainted with defendant, knew that he was a smoker and did not have access to cigarettes while incarcerated, and would likely request a cigarette from the detective. As in *People v Ferro* (63 NY2d 316, 322 [1984], *cert denied* 472 US 1007 [1985]), the detective engaged in conduct that was " 'reasonably likely to elicit an incriminating response' " from defendant (*see People v Kollar*, 305 AD2d 295, 297 [2003], *appeal dismissed* 1 NY3d 591 [2004]), and that was designed to circumvent defendant's right to counsel.

"The indelible right to counsel arises from the provision of the State Constitution that guarantees due process of law, the right to effective assistance of counsel and the privilege against compulsory self-incrimination" (*People v Grice*, 100 NY2d 318, 320 [2003]). Further, under the State Constitution, a waiver of rights may be obtained from a criminal suspect who is actually and known by the police to be represented by counsel only in the presence of counsel (*see People v Grimaldi*, 52 NY2d 611, 616 [1981]). "Underlying the rule is the concept that a criminal defendant confronted by the awesome prosecutorial machinery of the State is entitled, at a bare minimum, to the advice of counsel when he is considering surrender of his valuable legal rights" (*id.*). The advice of counsel, moreover, is "no less important if the police seek a relinquishment of defendant's constitutional right to be secure against unreasonable searches

and seizures than if they seek a waiver of his privilege against self[-]incrimination" (*People v Johnson*, 48 NY2d 565, 569 [1979]; *see People v Esposito*, 68 NY2d 961, 962 [1986]).

Consistent with the right to be secure against unreasonable searches and seizures, the People may obtain nontestimonial evidence such as a DNA sample from a suspect pursuant to a court order, "subject to constitutional limitation" (CPL 240.40 [2] [b]; *see Matter of Abe A.*, 56 NY2d 288, 291 [1982]; *People v Afrika*, 13 AD3d 1218, 1219 [2004], *lv denied* 4 NY3d 827 [2005]). Alternatively, the People may obtain a DNA sample with a suspect's consent, provided that the consent "was voluntary and not the product of coercion" (*People v Dail*, 69 AD3d 873, 874 [2010]). Here, however, defendant was actually and known by the police to be represented by counsel, and thus it would have been constitutionally impermissible for the detective to seek defendant's consent to provide a DNA sample before defendant had been permitted access to counsel (*see People v Loomis*, 255 AD2d 916 [1998], *lv denied* 92 NY2d 1051 [1999]). In my view, it was no less constitutionally impermissible to obtain such a sample from defendant without his knowledge or consent, i.e., by way of trickery, before he had been permitted access to counsel. I therefore would reverse the judgment, grant that part of defendant's motion seeking to suppress the DNA evidence obtained from defendant while he was in custody, and grant a new trial. Present—Scudder, P.J., Fahey, Lindley and Green, JJ.