*710 OPINION OF THE COURT
Barry Kron, J.
The People have moved at trial to introduce the testimony of a criminalist from the New York City Police Department. The witness reviewed photographs of fingerprints and a report by a colleague, also a criminalist in the same lab, who is unavailable to testify at trial and who did the actual lifting of fingerprints from a demand note.
In determining this application the court has heard oral argument from the parties. The prosecutor asserts that no Crawford[2] violation is caused by the introduction of trial testimony from a criminalist who did not actually lift fingerprints from a demand note found at the scene of the robbery, but rather were lifted by a colleague working in the same lab who is unavailable to testify at trial. In opposition, defendant argues that his Sixth Amendment right of confrontation is violated by the introduction of such testimony because he is unable to cross-examine the individual who actually lifted the prints from the note.
Queens County indictment XXXX-11 is currently on trial before this court. The underlying charges stem from the robbery of a laundromat located in Queens County on January 24, 2011. Defendant is charged with acting in concert to commit the crime of robbery in the second degree (Penal Law § 160.10 [1]). It is alleged that defendant and an apprehended other entered the location and the apprehended other handed the complainant a note which indicated that defendant, who was allegedly standing by the door, would start shooting people if the complainant did not hand over all the money in the register. The note at issue was left at the scene of the crime. The fact that a robbery occurred is not contested. The identity of defendant as the person standing at the door is at issue.[3] In addition to fingerprint evidence found on the demand note, the People contend that other evidence links defendant to the crime in the form of a witness who testified that she recognized defendant at the scene because she had previously seen him, and by the introduction of testimony from a handwriting expert linking defendant to the note. The defendant contends that he has an alibi defense which he will be introducing at trial, and he has denied the charges against him.
*711 The trial commenced with jury selection on Tuesday, December 4, 2012. At that time, the assistant district attorney represented that she had just learned that the New York City Police Department criminalist who lifted the fingerprints from the demand note was unavailable to testify at trial. The witness is currently on extended leave, which commenced on November 16, 2012, as the result of double knee replacement surgery (see record, dated Dec. 5 and 6, 2012). The People seek to introduce the actions and report of this unavailable criminalist through a coworker who is a senior criminalist at the same lab. As fully outlined herein, the People’s application to introduce such testimony is granted. If the People lay a proper foundation[4] the report and photographs of the lifted prints will be admissible because under the facts presented no Crawford, violation is created by such introduction.
The People argue that the report at issue is not testimonial. To support their contention, the People assert that at the time the prints were lifted from the note they did not inculpate defendant. Merely lifting the prints without any type of comparison was neither inculpatory nor exculpatory to defendant. On January 26, 2011, at the time of defendant’s arrest, no fingerprint comparison or analysis had even been done. The actual comparison by another detective, whose expertise was to compare and analyze latent prints to see if they could be identified as belonging to a potential suspect, was not done until January 27, 2011, the day after defendant’s arrest.
Additionally, the People assert that defendant’s confrontation rights are satisfied here because defendant has the opportunity to cross-examine the fingerprint analysis expert who will testify to the match of defendant’s fingerprint to the fingerprint on the note (see Williams v Illinois, 567 US —, 132 S Ct 2221 [2012]). The criminalist who lifted the print never identified defendant as leaving the print because that criminalist never did a comparison. Her only duty was to actually see if there was a usable print that could be lifted from the note. If a print was found, which it was in this case, the only action taken by the criminalist who lifted the print was to use chemicals and other tests to identify if a print which could be lifted existed on the paper. Her responsibility ended at that juncture. Furthermore, *712 whether a lifted print is actually sufficient for a comparison is ultimately determined by the fingerprint analysis expert, who is subject to cross-examination at this trial.
The Sixth Amendment of the United States Constitution provides: “In all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him.” The New York State Constitution similarly provides this right to confront (see NY Const, art I, § 6). Only statements which are testimonial implicate the Sixth Amendment right to confront witnesses (People v Brown, 13 NY3d 332 [2009], citing Davis v Washington, 547 US 813 [2006]).
In Crawford v Washington (541 US 36 [2004]), the Supreme Court held that out of court statements that are testimonial are barred under the Confrontation Clause, unless witnesses are unavailable and defendants had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. Notably, the “Confrontation Clause . . . applies to ‘witnesses’ against the accused — in other words, those who ‘bear testimony’ ” (Crawford at 51 [emphasis added]). The Court went on to state, “ ‘Testimony,’ in turn, is typically ‘[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact’ ” (id.). In Crawford, the Court defined “testimonial” statements as
“ex parte in-court testimony or its functional equivalent — that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially . . . ; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions [(citing White v Illinois, 502 US 346 [1992])]; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial” (id. at 51-52 [internal quotation marks omitted]).
There have been a plethora of cases over the years since the Court’s decision in Crawford analyzing what statements or evidence implicate an accused’s right of confrontation. The issue before this court is somewhat novel and little has been written on the specific issue presented herein. The physical act of raising latent fingerprints is analogous to reports seeking to test for the presence of DNA, and breath test machine maintenance and *713 calibration records, and simulator solution certifications. The court therefore finds no confrontation rights implicated here.
Just as lab technicians who produce “a DNA profile generally have no way of knowing whether it will turn out to be incriminating or exonerating — or both,” the criminalist here who lifted the print from the note had no way of knowing whether the print would match defendant’s fingerprints (Williams v Illinois, 567 US at —, 132 S Ct at 2244). In Williams, the Court held that even admission of the DNA report by an outside lab, Cell-mark, for the truth of its content, would not have been a Confrontation Clause violation (567 US at —, 132 S Ct at 2242-2244).[5] The Cellmark report’s
“primary purpose was to catch a dangerous rapist who was still at large, not to obtain evidence for use against petitioner, who was neither in custody nor under suspicion at that time. Similarly, no one at Cellmark could have possibly known that the profile that it produced would turn out to inculpate petitioner” Williams, 567 US at —, 132 S Ct at 2243-2244).
Thus, the report did not refer to testimony by “witnesses against an accused.” Similarly here, the criminalist who lifted the print and who was unavailable, or any other criminalist who could have lifted the print, would have no way of knowing that it would later implicate defendant as having his prints on the note. Notably, even though the defendant was arrested, the arrest was done before any fingerprint linked him to the note because a comparison was not done until a day after the arrest. Thus, the person who lifted the print from the note did not have defendant in mind as a suspect and was merely attempting to lift a print, if at all possible, from a note recovered at the scene of the crime. The criminalist did not know who the print that was lifted belonged to. The person merely lifted a print that she thought was usable to try and match someone as having touched the note. The fact that defendant in this case was in custody and under suspicion is not the key factor for Crawford analysis. The important factor is that the person lifting the fingerprint is doing it in a vacuum unconnected to any specified *714 individual, and is simply taking a blind, mechanical step in generating the potential for scientific evidence. The scientific evidence can ultimately turn out to be exculpatory, inculpatory or neutral. Defendant here was arrested based on identification evidence, totally unrelated to fingerprints analysis. Additionally, here again, as in Williams, defendant has the opportunity to confront the expert who testified as to the match.[6]
In People v Brown (13 NY3d 332 [2009]), the Court of Appeals held that the report in question contained machine-generated raw data, graphs and charts of a male specimen’s DNA characteristics that were isolated from a rape kit. The Court of Appeals held that the report was not testimonial inasmuch as there were “no conclusions, interpretations, or comparisons apparent in the report” (id. at 340).
The testing at issue here, merely to recover the print from the note, resulted in the discovery of nonaccusatory raw data similar to DNA tests, which has been found not violative of a defendant’s Confrontation Clause rights (see Brown; Rawlins; cf. People v Hernandez, 7 Misc 3d 568 [Sup Ct, NY County 2005]).[7]
Breath test machine maintenance and calibration records and simulator solution certifications are also admissible and do not violate a defendant’s confrontation rights under the United States Constitution (see People v Hulbert, 93 AD3d 953 [3d Dept 2012]).[8] Even though the statements in those documents “provided a necessary foundational requirement for the admission of [the] breath test results, they are not accusatory in the sense that they do not establish an element of the crimes . . . [and], standing alone, the documents shed no light on defend *715 ant’s guilt or innocence” (id. at 953-954 [citations omitted]). The report of the criminalist who discovered a fingerprint and who is unavailable to testify at this trial does not implicate defendant in any way because the report of the recovery itself does not link this defendant to the crime.
Accordingly, the People’s application to introduce the testimony and subsequent fingerprint photographs and report is granted. They are admissible, provided the People can lay a proper foundation.

. Crawford v Washington, 541 US 36 (2004).

. The apprehended other pleaded guilty and was sentenced on November 2, 2011 to a period of five years’ incarceration, to be followed by five years’ postrelease supervision, as part of a negotiated plea (see court file).

. The business records exception provides that “[a]ny writing or record . . . made as a memorandum or record of any . . . event, shall be admissible in evidence in proof of that . . . event, if the judge finds that it was made in the regular course of any business” (CPLR 4518 [a]).

. The Williams Court also held that a forensic specialist at the Illinois State Police Laboratory was permitted to testify about the DNA match to the defendant by relying on the report of Cellmark, an outside lab which provided the DNA profile to the police which ultimately matched defendant’s DNA. The report was admissible despite not having anyone from Cellmark itself come in to testify.

. In People v Encarnacion (87 AD3d 81 [1st Dept 2011]), the Court held that no violation of the defendant’s confrontation rights occurred where the prosecution presented DNA evidence through a witness who did not personally perform all the DNA testing about which she testified.
The Encamación court, citing examples of what are and are not Confrontation Clause violations explained that a Confrontation Clause violation would occur by the admission in evidence of reports evincing the results of fingerprint analysis performed on a defendant’s fingerprints and those recovered at the scene of a crime, without producing the person who performed the analysis (citing People v Rawlins, 10 NY3d 136 [2008]). In the case presently before the court, the expert who compared the prints to defendant is testifying.

. This court disagrees with the analysis and conclusion set forth in Hernandez, in which the New York County Supreme Court held that the admission of a latent print report without the testimony of the person who recovered the print violated Crawford.

. In Hulbert, the defendant was convicted, after a jury trial, of two counts of driving while intoxicated.