■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SHANON RICHARDSON, Appellant. [66 NYS3d 757]—

Appeal from a judgment of the Supreme Court, Erie County (Christopher J. Burns, J.), rendered September 1, 2015. The judgment convicted defendant, upon a jury verdict, of felony animal fighting (three counts), misdemeanor animal fighting, and cruelty to animals (two counts).

It is hereby ordered that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of three counts of felony animal fighting (Agriculture and Markets Law § 351 [2] [b], [d]), one count of misdemeanor animal fighting (§ 351 [6]), and two counts of cruelty to animals (§ 353). The underlying facts are essentially undisputed. Police officers lawfully entered defendant's home upon the consent of his wife, who was alone in the home and reported a burglary in progress. Upon entering the residence, the responding officers found one of defendant's four pit bulls causing a commotion on the first floor. The officers secured the dog, and then proceeded to sweep the home for intruders. While checking the basement, one of the responding officers observed a wounded dog in a cage with feces, and several treadmills that appeared to have been modified for use by dogs rather than humans. He also observed blood on the water heater and apparent dogfighting paraphernalia. The officer called a fellow officer to the basement for input, and the responding officers consulted with a lieutenant, a detective,

and officers from the Society for the Prevention of Cruelty to Animals (SPCA). The police determined that they would seek a search warrant, and they did not go through the house any further until after the warrant was issued. Several officers remained at the house with defendant's wife to ensure that she did not disturb any evidence while the police waited for the warrant.

Prior to the issuance of the search warrant, an SPCA officer photographed some of the items and arranged some of the evidence for photographing. Supreme Court suppressed "photographs of the interior of the refrigerator or its contents . . . [and] any vitamins or 'supplements' found on the upper shelf in the basement or photographs of those items," which were seized by the SPCA officer prior to the issuance of the warrant. The court denied suppression, however, with respect to items that included the treadmills, dogs, cages, leashes, straps, training sticks and harnesses, all of which were in plain view.

We reject defendant's contention that the court erred in refusing to suppress all of the physical evidence that was recovered from his home as fruit of the poisonous tree. The plain view observations of dogfighting paraphernalia were properly made by the responding police officers from a lawful vantage point (see e.g. People v Woods, 93 AD3d 1287, 1288 [4th Dept 2012], lv denied 19 NY3d 969 [2012]), and those observations preceded any unlawful conduct on the part of the SPCA officer, and provided probable cause for a search warrant. The items that were photographed and manipulated by the SPCA officer, after the observations of the responding officers and prior to the issuance of the warrant, were properly suppressed prior to trial and "those items are no longer in issue" (People v Burr, 70 NY2d 354, 359-360 [1987], cert denied 485 US 989 [1988]). The SPCA officer's unlawful conduct did not, however, vitiate the probable cause that flowed from the police officers' plain view observations.

We reject defendant's further contention that the officers' continued presence in the house while the search warrant was being obtained was unlawful (see People v Lubbe, 58 AD3d 426, 426 [1st Dept 2009], lv denied 12 NY3d 818 [2009]). Although the express consent of defendant's wife to search the home was limited to a protective sweep for intruders (see People v Love, 273 AD2d 842, 842 [4th Dept 2000]), " 'securing a dwelling, on the basis of probable cause, to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of either the dwelling or its contents' " (People v Osorio, 34 AD3d 1271, 1272 [4th Dept

2006], *lv denied* 8 NY3d 883 [2007], quoting *Segura v United States*, 468 US 796, 810 [1984]). The fact that it took approximately six hours from the time of the initial entry for the police to obtain the warrant does not change our view (*see People v Pinkney*, 90 AD3d 1313, 1316 [3d Dept 2011]).

We reject defendant's further contention that the court committed an *O'Rama* violation that constituted a mode of proceedings error when it did not reveal the contents of a note in which the jury disclosed its verdict (*see People v O'Rama*, 78 NY2d 270, 276-278 [1991]; *see generally* CPL 310.30). "[T]he submission of a verdict does not constitute a jury communication requesting information or instruction . . . , and it does not trigger the 'meaningful notice' requirement set forth in CPL 310.30, implicated when a court receives such a communication from the jury" (*People v Williams*, 64 AD3d 734, 736 [2d Dept 2009], *affd* 16 NY3d 480 [2011]). Further, inasmuch as the court "was not obligated to discuss with counsel its proposed explanation in response to the initial verdict prior to the court's addressing the jury" (*Williams*, 16 NY3d at 486), defense counsel was not ineffective for failing to object or to insist upon seeing the note sooner (*see generally People v Brown*, 13 NY3d 332, 341 [2009]; *People v Brooks*, 139 AD3d 1391, 1393 [4th Dept 2016], *lv denied* 28 NY3d 1026 [2016]).

Viewing the evidence in the light most favorable to the People (*see People v Contes*, 60 NY2d 620, 621 [1983]), we conclude that the evidence is legally sufficient to establish that defendant intended to engage in dogfighting, that he possessed dogfighting paraphernalia, and that he deprived the dogs of medical treatment. The record establishes that defendant was training pit bulls on his premises with devices that would constitute dogfighting paraphernalia if used with such intent. Defendant possessed a collection of literature on dogfighting, and his dogs had extensive scarring and wounds in various stages of healing, the distribution of which was consistent with dogfighting, and inconsistent with defendant's cat-scratch and broken-window explanations. In the opinion of the People's veterinary expert, the dogs were suffering from a lack of medical treatment. Viewing the evidence in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349 [2007]), we further conclude that the jury's verdict is not against the weight of the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495 [1987]). "[T]he jury was entitled to credit the testimony of the People's expert[s] over that of defendant's expert" (*People v Stein*, 306 AD2d 943, 944 [4th Dept 2003], *lv denied* 100 NY2d 599 [2003], *denied upon*

*reconsideration* 1 NY3d 581 [2003]), and to discredit the testimony of defendant that he did not intend to engage in, promote, or facilitate dogfighting (*see generally id.*). "Even assuming, arguendo, that a different verdict would not have been unreasonable, we note that the jury was in the best position to assess the credibility of the witnesses and, on this record, it cannot be said that the jury failed to give the evidence the weight it should be accorded" (*People v Carter*, 145 AD3d 1567, 1568 [4th Dept 2016] [internal quotation marks omitted]).

Finally, the sentence imposed is not unduly harsh or severe. Present—Carni, J.P., Lindley, DeJoseph, Troutman and Winslow, JJ.