People v Torres (2025 NY Slip Op 50594(U))

[*1]

People v Torres

2025 NY Slip Op 50594(U)

Decided on April 21, 2025

Criminal Court Of The City Of New York, Kings County

Tisne, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 21, 2025
Criminal Court of the City of New York, Kings County

The People of the State of New York,

against
Ezekiel Torres.

Docket No. CR-043534-24KN

For the People: Veniamin Privalov
For defendant: Rachel Kokenes

Philip V. Tisne, J.

On October 15, 2024, defendant was charged by felony complaint with Criminal Possession of a Weapon in the Second Degree (Penal Law § 265.03[3]) and other charges after police recovered a pistol from the car where he was a passenger. The People move to compel defendant to provide a DNA sample for comparison to DNA that was recovered from the pistol. Defendant opposes the motion and requests a protective order restricting the use of his DNA sample. The court assumes the parties' familiarity with facts of the case and the present motion. For the reasons that follow, the People's motion to compel is granted, and defendant's request for a protective order is denied.[FN1]
1.
A court may order a defendant to provide a sample of their blood, hair, or "other materials" if the People establish "probable cause to believe the defendant has committed the crime, a clear indication that relevant material evidence will be found, and that the method used to secure such evidence is safe and reliable."[FN2]
CPL 245.40(1)(e). The People have established [*2]each of elements here.
First, the People have established probable cause to believe that defendant committed second-degree criminal possession of a weapon. As is relevant here, a person is guilty of that crime when they knowingly possess a loaded firearm outside their home or place of business. See Penal Law § 265.03(3). Here, the People allege that officers stopped an automobile after they observed the driver commit traffic infractions. Jesus Perez was in the driver's seat; defendant was in the front passenger seat. A search of DMV records indicated that the car was registered to a woman, who Perez said was his ex-girlfriend. The officers arrested both occupants upon discovering that each had an open warrant, and a subsequent inventory search of the vehicle at the precinct uncovered a loaded pistol in the front-passenger-side glove compartment. These allegations provide probable cause that defendant knowingly possessed the pistol. After all, probable cause is a flexible standard that "does not require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed." People v Bigelow, 66 NY2d 417, 423 (1985); see CPL 70.10(2). Here, it is reasonable to believe that defendant knew there was a loaded pistol in the glove compartment located directly in front of where he was sitting. And given defendant's proximity to the pistol, it is also reasonable to believe that he had an "ability to use or dispose" of the pistol, and thus possessed it by exercising "dominion or control" over it. See CPL 10.00(8); People v Manini, 79 NY2d 561, 573 (1992). The parties' disagreement about application of the presumption of possession in CPL 265.15(3) is academic, since the "presence of the weapon in the car gave the officers probable cause to arrest the occupants and it is for the trier of fact to determine whether [defendant], in fact, possessed the gun." People v Miller, 237 AD2d 535, 536, 655 N.Y.S.2d 579, 580 (2d Dep't 1997).
Second, the People supplied a clear indication that the swab requested here may yield relevant material evidence. The Office of the Chief Medical Inspector ("OCME") tested three test swabs taken from the recovered pistol and developed a DNA profile from two of them (swabs one and two) of a single individual referred to as Male Donor A, which comprised 81.53% of the sample from swab one and 88.92% of the sample from swab two. OCME could not generate a DNA profile from the remaining material on those swabs, but it determined that the remaining material on each would be suitable for comparison. As to swab three, OCME could not generate a DNA profile but determined that the sample would be suitable for comparison (Mot. Ex. 1). Further, OCME tested a cigarette butt obtained from Perez and determined that his DNA matched the DNA of Male Donor A (Mot. Ex. 2).
Given these factual allegations, there is a clear likelihood that comparing defendant's DNA to the tested swabs will yield material relevant evidence. To be sure, DNA testing is not needed to prove that defendant is not Perez. But a comparison with the non-Perez material on swabs one and two, as well as swab three, is likely to yield relevant material evidence to the charges in this case, by tending to show whether defendant's DNA was found on the pistol. The probity of that potential evidence is not diminished, as defendant contends (Opp. 10-11), merely because Perez was a major contributor to the material recovered and tested on swabs one and [*3]two. At most, this would tend to prove that Perez also had possession of the pistol, but "possession, even if joint, is still possession." People v Williams, 170 AD3d 1046, 1048 (2d Dep't 2019) (quoting People v Torres, 68 NY2d 677, 679 (1986)).
Third, there is no dispute here that the method proposed to be used to secure a DNA sample from defendant in this case is both safe and reliable. See People v Goldman, 35 NY3d 582, 594 (2020) ("The buccal swab is undeniably safe, consists of a minimal intrusion and involves no discomfort.").
For these reasons, the People's motion to compel is granted.

2.

Defendant's request for a protective order is denied. "Upon a showing of good cause," the court is authorized to issue a protective order directing that the "discovery or inspection" of material disclosed under CPL article 245 should be "denied, restricted, conditioned or deferred." CPL 245.70(1). Here, defendant has submitted a proposed protective order that would (i) direct OCME to compare defendant's DNA only to the evidence recovered in this case and (ii) prohibit OCME from entering defendant's DNA into the "OCME DNA Databank" (Proposed Order). Although the parties have not addressed the matter, the court assumes that it is authorized to issue a protective order regulating the conduct of OCME, which is an independent agency that is not a party to this criminal action. See, e.g., People v Brown, 13 NY3d 332, 340 (2009). Nevertheless, as explained below, defendant has failed to establish good cause for the protective order he seeks in this case.
For one thing, defendant has not meaningfully developed a record that would justify granting him the relief he seeks. Defendant contends that his constitutional and statutory rights will be violated if his DNA is uploaded into the "OCME DNA databank." But defendant supplies no meaningful factual allegations about what the databank is, who manages it, what it contains, or how it is used—let alone allegations about what will happen to his DNA sample if it is entered into the Databank. These unresolved questions mean that there is insufficient basis for the court to determine whether, as defendant contends, entering his DNA test results into the Databank would violate "constitutional and statutory limitations prohibiting the dissemination of such results without the consent of the subject of the testing" (Opp. 11). Defendant's failure to supply a sufficient record to allow the court to adjudicate his request by itself would require the denial of his application for a protective order.
In any event, defendant's arguments fail to establish good cause. See CPL 245.70(4). Defendant cites unelaborated "constitutional . . . limitations" on the dissemination of DNA test results (Opp. 15). But the Fourth Amendment is not violated by taking a DNA buccal swab from a defendant arrested for a serious crime, see King, 569 US at 465, nor does it impose any independent restriction on the subsequent use of properly-seized corporeal evidence, see People v King, 232 AD2d 111, 117 (2d Dep't 1997); see also People v Sterling, 57 AD3d 1110, 1112 (3d Dep't 2008). Defendant's federal constitutional interests are thus not implicated here. And although New York's analogous constitutional provision has been interpreted to afford greater protection than its federal counterpart in some contexts, see, e.g., People v Hollman, 79 NY2d 181, 194 (1992), defendant does not make any argument that the state constitution should be construed more broadly than the federal constitution here. There is simply no basis, then, for defendant's conclusory assertion that constitutional considerations warrant granting the protective order he seeks in this case.
Executive Law § 995-d also does not support defendant's request for a protective order. [*4]That provision states that "[a]ll records, findings, reports, and results of DNA testing performed on any person shall be confidential and may not be disclosed or redisclosed without the consent of the subject of such DNA testing." Executive Law § 995-d(1). It also states that "records, findings, reports, and results of DNA testing, other than a DNA record maintained in the state DNA identification index, may be disclosed in a criminal proceeding to the court, the prosecution, and the defense pursuant to a written request on a form prescribed by the commissioner of the division of criminal justice services." Executive Law § 995-d(2) (emphasis added). On its face, nothing in Executive Law § 995-d purports to prohibit OCME from entering defendant's DNA into the "OCME DNA Databank." Indeed, that provision appears to provide OCME broad license to disclose and redisclose DNA information in connection with a criminal proceeding. See CPL 1.20(18) (defining "criminal proceeding" broadly to include any proceeding that "occurs in a criminal court and is related to a prospective, pending or completed criminal action . . . or involves a criminal investigation").
The court is not persuaded by defendant's argument that entering his DNA into OCME's Databank "constitutes a statutorily prohibited re-disclosure of private DNA information" (Opp. 14). First, there are no factual allegations about what happens when defendant's DNA is entered into the DNA Databank, let alone allegations that support defendant's characterization of the legal consequences of entering his DNA into the Databank. Second, it is not clear that OCME violates the statutory prohibition on disclosure and redisclosure by disclosing records rightfully in its possession internally to its own employees. But see People v Rodriguez, 196 Misc 2d 217, 222 (Sup Ct, Kings County 2003) (finding a prohibited redisclosure occurs whenever an individual's DNA information is "revealed to any OCME employee who has access to [OCME's 'linkage'] database and who is not working on the instant criminal proceeding"). To the contrary, read together with other provisions of the statute, the prohibition on disclosure and redisclosure appears to apply only where OCME discloses DNA information to an external person or entity, rather than to one of OCME's employees who is "authorized to have access to such records." Executive Law § 995-f. Third, even if entering defendant's DNA into OCME's DNA Databank did constitute a disclosure or redisclosure, defendant does not explain why it would not be covered by the exemption for disclosure in a "criminal proceeding to the court, the prosecution, and the defense." Executive Law § 995-d(2). As noted above, that provision would appear to provide OCME broad discretion to disclose DNA information in its possession.
In the end, however, defendant's statutory argument fails to persuade regardless of whether Executive Law article 49-B imposes limits on OCME's authority to interact with defendant's DNA information after that information is uploaded into OCME's Databank. This is because defendant's proposed protective order does not seek to prohibit OCME from accessing or disclosing defendant's DNA information after it is entered into the Databank. Rather, defendant seeks an order that would prevent OCME from entering his information into the Databank in the first place. And as explained above, there is nothing in Executive Law article 49-B that warrants that relief.
Having failed to establish good cause, defendant's request for a protective order is denied.
The foregoing constitutes the order of the court.
Dated: April 21, 2025
Brooklyn, New York
Hon. Philip V. Tisne

Footnotes

Footnote 1:The court has considered the People's Affirmation and Memorandum of Law ("Mot."), and defendant's Affirmation and Memorandum of Law Opposing People's Motion Permitting Taking of an Oral Swab and Supporting Defendant's Motion for a Protective Order ("Opp.").

Footnote 2:In Matter of Abe A., 56 NY2d 288, 291 (1982), the Court of Appeals held that, to compel a defendant to provide "corporeal evidence," the Fourth Amendment to the U.S. Constitution required the People to satisfy essentially the same test that has been codified in CPL 245.40(1)(e). The U.S. Supreme Court has since concluded that the Fourth Amendment is not violated where a defendant arrested for a "serious offense" is required to provide a DNA sample to police as part of a "routine booking procedure." Maryland v King, 569 US 435, 465 (2013).