[892 NE2d 843, 862 NYS2d 450]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY FREYCINET, Appellant.

Argued May 29, 2008; decided June 26, 2008

**POINTS OF COUNSEL**

*Appellate Advocates,* New York City (*Winston McIntosh* and *Lynn W.L. Fahey* of counsel), for appellant. The trial court violated appellant's constitutional right to confront the witnesses against him when, over objection, it admitted an absent medical examiner's autopsy findings and permitted another medical examiner, who had not even been present when the autopsy was performed, to analyze and interpret the findings and give her opinion on contested issues based on them. (*Crawford v Washington,* 541 US 36; *Ohio v Roberts,* 448 US 56; *People v Liner,* 9 NY3d 856; *People v Durio,* 7 Misc 3d 729; *Davis v Washington,* 547 US 813; *Diaz v United States,* 223 US 442; *People v Rogers,* 8 AD3d 888; *People v Nisonoff,* 293 NY 597; *People v Bryant,* 27 AD3d 1124; *United States v Feliz,* 467 F3d 227.)

*Richard A. Brown, District Attorney,* Kew Gardens (*Jennifer Hagan* and *John M. Castellano* of counsel), for respondent. The Appellate Division correctly held that the autopsy report was properly admitted under the Confrontation Clause. (*Crawford v Washington,* 541 US 36; *United States v Feliz,* 467 F3d 227; *People v Nisonoff,* 293 NY 597; *Davis v Washington,* 547 US 813; *United States v Morgan,* 505 F3d 332; *United States v Munoz-Franco,* 487 F3d 25; *United States v Urqhart,* 469 F3d 745; *United States v Baker,* 458 F3d 513; *United States v Hagege,* 437 F3d 943; *United States v Weiland,* 420 F3d 1062.)

**OPINION OF THE COURT**

Smith, J.

In *People v Rawlins* (10 NY3d 136 [2008]), we considered whether fingerprint comparison reports and the report of a DNA technician were "testimonial" evidence under *Crawford v Washington* (541 US 36 [2004]). This case raises a similar question about an autopsy report. Analyzing the question in the way *Rawlins* requires, we conclude that the redacted report at issue here was not testimonial.

I

Defendant's girlfriend died of a knife wound, and defendant was indicted for murder, manslaughter and other crimes. His

defense was that he killed her either justifiably or by accident. He did not testify at trial, but relied on statements he made to police and a prosecutor after his arrest, in which he described the event as occurring when he and the victim were lying next to each other. According to his account, the two had an argument; the victim punched him and reached first for an iron and then for a knife; he reached the knife before she did; she grabbed his wrist; and the knife "just hit her."

Dr. John Lacy, of the New York City Office of Chief Medical Examiner, performed an autopsy on the victim. Dr. Lacy later moved to Seattle, and he did not return for the trial. His report, redacted to eliminate his opinions as to the cause and manner of the victim's death, was received in evidence over defendant's Confrontation Clause objection.

The report said that Dr. Lacy observed "a single perforating stab wound of the face and neck and minor blunt force injury of the face." It said that the stab wound was on the "left face in front of the left ear," and that it was "oriented obliquely with one blunt angle close to the ear and one sharp angle directed toward the chin." The report described the "wound track," as passing "through the subcutaneous tissue and posterior scalp." The report gave the location of the "exit wound" as "just within the hairline of the back of the neck." It also noted a small round abrasion on the left cheek.

Dr. Corinne Ambrosi of the Medical Examiner's office testified as an expert for the People, giving opinions based on the facts in Dr. Lacy's report. She concluded that the cause of the victim's death was bleeding from the stab wound. She also said that the knife, when it entered the victim's neck, was positioned with its blunt edge toward the ear and its sharp edge "facing more toward the front." She said that the wounds were "consistent with a right-handed person as a stabber on top of the person being stabbed" and "with the stabber using force."

In closing argument, the People relied both on Dr. Ambrosi's opinions and Dr. Lacy's report to attack defendant's version of the facts. The prosecutor argued that defendant must have been on top of the victim, not beside her as he said, and that so deep a wound, "from the front of her face to the back of her scalp," could not have been inflicted by accident.

The trial judge, sitting without a jury, acquitted defendant of murder but convicted him, among other things, of manslaughter in the second degree. The Appellate Division affirmed. A judge of this Court granted leave to appeal, and we now affirm.

## II

The Confrontation Clause of the United States Constitution says: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him" (US Const Amend VI). *Crawford* and *Davis v Washington* (547 US 813 [2006]) establish that this clause does not bar the use of out-of-court statements by declarants who are not "witnesses"; and *Crawford* held that witnesses are "those who 'bear testimony' " (*Crawford*, 541 US at 51). The Supreme Court has not defined "testimony" in this context, though it has said that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not" (*id.*). The only issue on this appeal is whether the redacted version of Dr. Lacy's autopsy report was "testimony" as that term is used in *Crawford*.

The question of when reports of scientific procedures are and are not testimonial is one we examined at length in *Rawlins*. In that case, we refused to establish an "absolute rule" that documents within the "business records" exception to the hearsay rule are never testimonial, noting that under New York law records of law enforcement agencies may be business records (10 NY3d at 149-150). Instead, we discussed "various indicia of testimoniality" (*id.* at 151). Among them are: the extent to which the entity conducting the procedure is "an 'arm' of law enforcement" (*State v Crager*, 116 Ohio St 3d 369, 379, 879 NE2d 745, 753 [2007], quoted in *Rawlins*, 10 NY3d at 153); whether the contents of the report are a contemporaneous record of objective facts, or reflect the exercise of "fallible human judgment" (10 NY3d at 154); the question—closely related to the previous two—of whether a pro-law-enforcement bias is likely to influence the contents of the report (*id.* at 153); and whether the report's contents are "directly accusatory" in the sense that they explicitly link the defendant to the crime (*id.* at 156). Considering these factors, we held in *Rawlins* that fingerprint comparison reports prepared by a police department analyst, which said that prints found at two crime scenes belonged to the defendant, were testimonial. However, in *People v Meekins* (decided with *Rawlins*), in which the police had sent samples from a rape kit to a private laboratory for testing, we held that a technician's report establishing that a particular DNA profile was obtained from one of the samples was nontestimonial.

Under the *Rawlins* approach, Dr. Lacy's autopsy report was clearly not testimonial. The duties of the Office of Chief Medical Examiner, Dr. Lacy's employer, "are, by law, independent of and not subject to the control of the office of the prosecutor"; the agency "is not a law enforcement agency" (*People v Washington*, 86 NY2d 189, 192 [1995]). Dr. Lacy's report, redacted to eliminate his opinions, was very largely a contemporaneous, objective account of observable facts. The giving of opinions was left to Dr. Ambrosi, who testified at trial. Admittedly, a report of a doctor's findings at an autopsy may reflect more exercise of judgment than the report of a DNA technician; for example, Dr. Lacy no doubt exercised judgment in characterizing the victim's injury as a "stab wound." Nevertheless, the significance of the report to this case derives almost entirely from Dr. Lacy's precise recording of his observations and measurements as they occurred. It is hard to imagine how this redacted report could have been significantly affected by a pro-law-enforcement bias.

Finally, Dr. Lacy's report did not directly link defendant to the crime. The report is concerned only with what happened to the victim, not with who killed her. As *Crawford* explains, the Confrontation Clause derives from the strongly held idea of our country's founders, derived from English common law, that a person accused should have the right to face his or her "accuser." The Clause is in a way an echo of Sir Walter Raleigh's unheeded demand, quoted in *Crawford*: "Call my accuser before my face" (541 US at 44). Dr. Lacy was not defendant's "accuser" in any but the most attenuated sense.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge KAYE and Judges GRAFFEO, READ, PIGOTT and JONES concur; Judge CIPARICK taking no part.

Order affirmed.