[923 NYS2d 428]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RALPH HALL, Appellant.

First Department, April 21, 2011

## APPEARANCES OF COUNSEL

*Steven Banks, The Legal Aid Society*, New York City (*Kerry Elgarten* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Amy-jane Rettew* of counsel), for respondent.

RICHTER, J.

In this appeal from a first-degree murder conviction, defendant asserts that under *Melendez-Diaz v Massachusetts* (557 US —, 129 S Ct 2527 [2009]), the admission of an unredacted autopsy report violated his rights under the Confrontation Clause. However, under *People v Freycinet* (11 NY3d 38 [2008]), which is binding upon us, the factual part of the autopsy report is nontestimonial and admissible, and, in this case, *Melendez-Diaz* does not mandate a contrary result.

At trial, Dr. Lara Goldfedder, a medical examiner with the Office of Chief Medical Examiner (OCME), testified for the prosecution about the cause of the victim's death. The autopsy was performed by Dr. John Matthew Lacy, a medical examiner who had moved out of state. Dr. Goldfedder explained that she had reviewed Dr. Lacy's autopsy report as well as several photographs taken during the autopsy. Based on her familiarity with OCME's practices and procedures, Dr. Goldfedder laid the foundation for admission of the report and photographs as business records. Based on her own review of these materials, Dr. Goldfedder offered her expert opinion that the cause of the victim's death was a gunshot wound to his head. Although during her testimony, Dr. Goldfedder made some references to facts contained in the autopsy report, she emphasized that all of the conclusions she reached were her own.

The Sixth Amendment grants an accused the right to confront the witnesses against him or her—that is, "those who bear testimony" (*Crawford v Washington*, 541 US 36, 51 [2004] [internal quotation marks and citation omitted]). In *Crawford*, the Supreme Court held that the Confrontation Clause of the Sixth Amendment prohibits the prosecution from introducing "testimonial" statements of a nontestifying witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination (541 US at 68). While not exhaustively defining "testimonial," the *Crawford* Court noted that testimonial statements typically involve "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact" (*id.* at 51 [internal quotation marks and citation omitted]).

In *Freycinet*, the Court of Appeals, applying *Crawford*, held that the factual portions of the autopsy report in that case were "clearly not testimonial" (11 NY3d at 42). Acknowledging that there is no "absolute rule that documents within the business

records exception to the hearsay rule are never testimonial" (*id.* at 41 [internal quotation marks omitted]), and recognizing that "a report of a doctor's findings at an autopsy may reflect more exercise of judgment than the report of a DNA technician" (*id.* at 42), the Court nevertheless held that the introduction of the redacted autopsy report into evidence as a business record did not violate the Confrontation Clause.

In rejecting the defendant's argument, the Court of Appeals in *Freycinet* focused on "various indicia of testimoniality" that it had previously identified in *People v Rawlins* (10 NY3d 136, 151 [2008]). These indicia include:

> "the extent to which the entity conducting the procedure is an arm of law enforcement; whether the contents of the report are a contemporaneous record of objective facts, or reflect the exercise of fallible human judgment; . . . whether a pro-law-enforcement bias is likely to influence the contents of the report; and whether the report's contents are directly accusatory in the sense that they explicitly link the defendant to the crime" (*Freycinet*, 11 NY3d at 41 [internal quotation marks and citations omitted]).

Applying these criteria, the Court found that the admission of the factual part of the autopsy report did not run afoul of the Confrontation Clause.

Although we are bound by decisions of the United States Supreme Court on federal constitutional matters (*see People v Kin Kan*, 78 NY2d 54, 59 [1991]), *Melendez-Diaz* did not explicitly hold that autopsy reports are testimonial. The issue in *Melendez-Diaz*—the admissibility of sworn drug analysis certificates where no live witness was available for cross-examination—is different from the issue before us. As such, the Court of Appeals' decision in *Freycinet* is directly on point and applicable to this case. Indeed, in *People v Holguin* (71 AD3d 504 [2010], *lv denied* 15 NY3d 774 [2010]), a post-*Melendez-Diaz* decision, this Court decided the precise issue presented here and found no basis to reverse the judgment.

*Melendez-Diaz* neither explicitly overruled *Freycinet* nor made its holding untenable. Justice Thomas, although joining the majority in *Melendez-Diaz*, also wrote separately to stress that the drug analysis certificates were "quite plainly affidavits" (557 US at —, 129 S Ct at 2543 [Thomas, J., concurring]). He emphasized that he continued to adhere to his position that

"the Confrontation Clause is implicated by extrajudicial statements only insofar as they are contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions" (*id.* [internal quotation marks and citation omitted]). Thus, any holding in *Melendez-Diaz*, at least insofar as scientific forensic reports are concerned, is arguably limited to the "formalized testimonial materials" to which Justice Thomas referred (*see Marks v United States*, 430 US 188, 193 [1977]; *State v Mitchell*, 4 A3d 478, 489, 490, 2010 ME 73, ¶¶ 43, 47 [2010]). Here, the autopsy report, which was unsworn, cannot fairly be viewed as "formalized testimonial material[ ]."

In *Melendez-Diaz*, the *"sole purpose"* of the sworn affidavits under Massachusetts law was to provide prima facie evidence of the composition and weight of the controlled substance (557 US at —, 129 S Ct at 2532). The *Melendez-Diaz* Court noted that the analysts were unquestionably aware of the affidavits' evidentiary purpose, since that purpose was reprinted on the affidavits themselves (*id.*). Thus, the *Melendez-Diaz* Court found that the analysts' affidavits were "prepared specifically for use at petitioner's trial," and were testimony subject to the Confrontation Clause (557 US at —, 129 S Ct at 2540).

In contrast, the mandate of the OCME is "to provide an impartial determination of the cause of death" (*People v Washington*, 86 NY2d 189, 193 [1995]). As the Court in *Freycinet* noted, the OCME is not "a law enforcement agency" and is "by law, independent of and not subject to the control of" the prosecutor (11 NY3d at 42 [internal quotation marks and citation omitted]). Although OCME performs autopsies where the cause of death is suspected to be criminal, its powers and duties also extend to deaths arising, inter alia, "by accident, by suicide, suddenly when in apparent health, [or] when unattended by a physician" (NY City Charter § 557 [f] [1]). While it is true that some autopsy reports may later be used in litigation, that does not mean that such reports are "prepared specifically for use at . . . trial," as were the affidavits in *Melendez-Diaz* (557 US at —, 129 S Ct at 2540; *see also United States v Feliz*, 467 F3d 227, 234-235 [2d Cir 2006]).

Furthermore, *Melendez-Diaz* did not address the situation here, where a second expert testified and was fully subject to cross-examination. In *Melendez-Diaz*, no live testimony was offered on the composition and weight of the seized substances. In this case, there was in-court testimony by Dr. Goldfedder, a medical examiner from the same office as the medical examiner

who had performed the autopsy. Dr. Goldfedder first testified about her own training and experience in determining the cause and manner of death and the procedures that OCME uses for documenting autopsies. Upon admission of the autopsy report as a business record, Dr. Goldfedder testified as to the date the autopsy was performed, the recorded height and weight of the victim, and the clothes he was wearing. She testified about the two injuries on the victim's body, a gunshot wound in the right temple in which the bullet passed through the brain and lodged in the opposite side of the skull, and a second gunshot wound in which the bullet grazed the victim's shoulder and lodged against the spinal column. Dr. Goldfedder then offered her own expert opinion as to what caused the victim's death. Thus, as in *Freycinet*, the testifying medical examiner relied upon factual portions of the autopsy report consisting primarily of contemporaneous observations and measurements, but reached conclusions that were entirely her own.

Dr. Goldfedder was thoroughly cross-examined by defense counsel about both the facts contained in the autopsy report as well as the conclusions she reached based on those facts. Defense counsel also elicited testimony from Dr. Goldfedder establishing that the "remains" of the victim provided no information about the shooter such as his identity, height or weight, or whether the shooter was standing or sitting. Defense counsel established that there was no determination as to whether one or two guns were used, or whether there were one or two shooters. Therefore, as in *Freycinet*, the factual portions of the autopsy report in this case, which recorded only what happened to the victim, did not directly link defendant to the crime (*see* 11 NY3d at 42). In any event, defense counsel virtually stipulated to the cause of death in his opening statement by referring to the victim's "execut[ion]" by "guns [with] silencers."

In *People v Brown* (13 NY3d 332 [2009]), a case decided after *Melendez-Diaz*, the Court of Appeals addressed whether a DNA report containing a profile of a specimen taken from the victim's rape kit was admissible in the absence of testimony from the technicians who prepared the report. In finding there was no Confrontation Clause violation, the Court reasoned that, unlike in *Melendez-Diaz*, the People had called the forensic biologist who had conducted the analysis linking defendant's DNA to the profile found in the rape kit. The Court noted that the testifying witness—and not the DNA report, which consisted only of "machine-generated graphs, charts and numerical data"—had

made "the critical determination linking [the] defendant to [the] crime" (*Brown*, 13 NY3d at 340). Likewise, here, the factual portions of the autopsy report do not link defendant to the crime or contain subjective analysis. Furthermore, the People produced Dr. Goldfedder who testified, and was cross-examined, about her own conclusions as to the cause of death. We need not decide whether admission of an autopsy report that directly links the defendant to the crime would violate the Confrontation Clause or whether an autopsy report could be admitted without a testifying witness because that is not what occurred here.

It bears mentioning that the blanket prohibition on the admission of autopsy reports urged by defendant could result in practical difficulties for murder prosecutions. If, for example, the medical examiner who performed the autopsy passes away before a perpetrator is apprehended and tried, barring the use in evidence of the autopsy report could, in some situations, effectively amount to a statute of limitations on murder, where none otherwise exists (*see e.g. Melendez-Diaz*, 557 US at —, 129 S Ct at 2546 [Kennedy, J., dissenting]).

■ Defendant failed to preserve the specific argument that the trial court should have redacted those portions of the autopsy report that reflected Dr. Lacy's expert opinion, and we decline to review it in the interest of justice. As an alternative holding, we find that any error in admitting the autopsy report was harmless. The evidence of the cause of the victim's death by shooting and defendant's guilt was overwhelming (*see People v Crimmins*, 36 NY2d 230, 242 [1975]). At trial, ample evidence was presented in addition to the autopsy report, including eyewitness testimony, the testimony of police and emergency medical personnel, and photographic and other corroborating evidence.

■ The court properly denied defendant's motion to suppress identification testimony. The lineup photographs establish that the lineup was not suggestive (*see People v Chipp*, 75 NY2d 327, 336 [1990], *cert denied* 498 US 833 [1990]). Although a child witness had described defendant as "old," and defendant was older than the other lineup participants, he did not stand out from the others, who looked much older than their ages. The disparity between the actual ages of a defendant and other lineup participants "has little relevance unless such disparity is reflected in their physical appearances" (*People v Amuso*, 39 AD3d 425, 425 [2007], *lv denied* 9 NY3d 862 [2007]). This is

exemplified by the hearing court's observation, after viewing the lineup photographs, that one participant looked older than defendant even though he was actually 14 years younger. Defendant's other challenges to the composition of the lineup are without merit.

■ The court properly exercised its discretion in excluding defendant's girlfriend from the courtroom on the ground that she was a potential witness, and its ruling did not violate defendant's right to a public trial (*see People v Baker*, 14 NY3d 266, 274 [2010]). The People established a good faith basis for their assertion that they might need to call the girlfriend, especially in light of defense counsel's conflicting statements as to whether he might raise certain issues about which the girlfriend would have been a knowledgeable witness.

We have considered defendant's remaining claims, including those in his supplemental pro se brief, and find them unavailing.

Accordingly, the judgment of the Supreme Court, New York County (Charles J. Tejada, J.), rendered October 7, 2005, convicting defendant, after a jury trial, of murder in the first and second degrees, attempted murder in the first degree, attempted assault in the first degree, robbery in the first degree (two counts), robbery in the second degree and criminal possession of a weapon in the second and third degrees, and sentencing him to an aggregate term of 80 years to life, should be affirmed.

GONZALEZ, P.J., TOM, CATTERSON and MOSKOWITZ, JJ., concur.

Judgment, Supreme Court, New York County, rendered October 7, 2005, affirmed.