# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**860**

**KA 09-00469**

PRESENT: SCUDDER, P.J., SMITH, FAHEY, AND PERADOTTO, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                              MEMORANDUM AND ORDER

STACEY R. CASTOR, DEFENDANT-APPELLANT.
(APPEAL NO. 1.)

---

BIANCO LAW OFFICE, SYRACUSE (RANDI JUDA BIANCO OF COUNSEL), FOR
DEFENDANT-APPELLANT.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL
OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Onondaga County Court (Joseph E.
Fahey, J.), rendered March 5, 2009. The judgment convicted defendant,
upon a jury verdict, of murder in the second degree, attempted murder
in the second degree and offering a false instrument for filing in the
first degree.

It is hereby ORDERED that the judgment so appealed from is
unanimously affirmed.

Memorandum: In appeal No. 1, defendant appeals from a judgment
convicting her following a jury trial of, inter alia, murder in the
second degree (Penal Law § 125.25 [1]), based upon the death of her
second husband from poisoning with antifreeze, and attempted murder in
the second degree (§§ 110.00, 125.25 [1]), based upon the poisoning of
her daughter with a combination of pharmaceutical drugs and alcohol.
In appeal No. 2, defendant appeals from an order denying her motion
pursuant to CPL 440.10 seeking to vacate the judgment, inter alia, on
the ground that her statement to the police on September 7, 2007 was
taken in violation of her indelible right to counsel.

Defendant's second husband was found dead on August 22, 2005, and
his death from poisoning with antifreeze was determined by the Medical
Examiner to be a suicide. More than two years later, on September 7,
2007, defendant agreed to discuss her husband's death with the police,
and she waived her *Miranda* rights and provided a statement. Two days
before speaking to defendant, the police had received the results of
an autopsy performed on the exhumed body of defendant's first husband,
who had died in 2000, which established that he too had died from
poisoning with antifreeze. On September 14, 2007, defendant's
youngest daughter found her 20-year-old sister, defendant's eldest
daughter (daughter), unresponsive in her bedroom as a result of

ingesting prescription drugs and alcohol.  In a one-page typed document that was purported to be the daughter's suicide note (purported suicide note), it was stated that the daughter had killed both her father, defendant's first husband, and her stepfather, defendant's second husband.  When the daughter regained consciousness, she denied that she had attempted to kill herself and that she had written the purported suicide note.

We address first defendant's contentions in appeal No. 1.  We reject defendant's contention that County Court abused its discretion in permitting the People to introduce evidence in their direct case of the uncharged murder of defendant's first husband.  Contrary to defendant's contention, the court properly determined that there was clear and convincing evidence that defendant committed that uncharged murder.  It is well established that where, as here, the identity of the perpetrator of the uncharged crime is unknown, the court must determine that there is clear and convincing evidence of both a unique modus operandi and defendant's identity as the perpetrator of the uncharged crime before allowing the People to present evidence of the uncharged crime on the issue of identity in their direct case against defendant (*see People v Robinson*, 68 NY2d 541, 550).  First, we conclude that "the People presented clear and convincing evidence that defendant committed the [uncharged murder of her first husband] by using a distinctive and unique modus operandi," i.e., poisoning with antifreeze (*People v Curry*, 82 AD3d 1650, 1650, *lv denied* 17 NY3d 805; *see People v Beam*, 57 NY2d 241, 252-253; *cf. People v Crawford*, 4 AD3d 748, 749, *lv denied* 2 NY3d 797).  Second, we conclude that the People presented clear and convincing evidence that defendant was the perpetrator of her first husband's uncharged murder.  The People's evidence at trial establishes that defendant had purchased a life insurance policy on the life of her first husband; that the daughter was 12 years old when her father, defendant's first husband, died and thus was unlikely to have committed the fairly sophisticated murder of her father; that defendant had refused to consent to an autopsy of her first husband, who was 38 years old at the time of his death; that the purported suicide note referenced the fact that defendant's first husband also had ingested rat poison, a fact that could be known only by the person who killed him; and that defendant admitted to having rat poison in their home.

Contrary to defendant's further contention, the court properly determined that the evidence of the uncharged murder was inextricably interwoven with the evidence of the charged crimes inasmuch as the uncharged murder was discussed in the purported suicide note and was probative evidence of the motive for the attempted murder of the daughter.  In order "[t]o be inextricably interwoven . . . the evidence must be explanatory of the acts done or the words used in the otherwise admissible part of the evidence" (*People v Ventimiglia*, 52 NY2d 350, 361).  Here, the People's expert explained that the first draft of the purported suicide note had been written on the family's computer four days after defendant learned that the body of her first husband had been exhumed.  Further, the purported suicide note explained why the daughter killed both of defendant's husbands and included numerous references to the uncharged murder.  Thus, the

evidence of the uncharged murder provided necessary background information to explain references to that crime in the purported suicide note, was probative of the motive for the attempted murder of defendant's daughter, and placed the timing of the writing of the purported suicide note and attempted murder of the daughter "in context" (*People v Dorm*, 12 NY3d 16, 19; *see People v Carey*, 92 AD3d 1224, 1225, *lv denied* 18 NY3d 992).

Defendant failed to preserve for our review her contention that the court erred in failing to charge the jury that it could consider evidence of the uncharged murder only if it determined that the People proved by clear and convincing evidence that defendant killed her first husband (*see People v Perez*, 89 AD3d 1393, 1394, *lv denied* 18 NY3d 961). In any event, that contention lacks merit inasmuch as the court, rather than the jury, must make the determination whether the People have presented clear and convincing evidence that defendant was the perpetrator of the uncharged crime (*see Robinson*,68 NY2d at 550). We further conclude that the court properly instructed the jury that the evidence of the uncharged murder could be considered only for the limited purpose of determining the identity of the "perpetrator in this case" (*see id.* at 549-550).

We reject defendant's contention that the court erred in refusing to suppress a statement she made to the police on September 14, 2007 at the hospital regarding the substances that the daughter may have ingested. The People correctly concede that defendant's attorney had advised the police on September 12, 2007 that he had been retained by defendant in connection with the investigation of the death of defendant's second husband and that she was not to be questioned concerning that matter. We conclude, however, that the record establishes that the police did not question defendant regarding her second husband's death, nor can it be said that the discussion regarding the daughter's condition would "inevitably elicit incriminating responses" regarding the second husband's death (*People v Cohen*, 90 NY2d 632, 638).

Defendant's contention that the court erred in refusing to suppress items seized from her home on September 14, 2007 because the police had entered her home without her consent while waiting for the search warrant is without merit. We note as a preliminary matter that the purported suicide note was not seized by the police, but instead was in their possession because defendant requested that a police officer take the note from her younger daughter (*see People v Carrier*, 270 AD2d 800, 801, *lv denied* 95 NY2d 864). With respect to the items seized from defendant's home, we conclude that, because the police initially entered the home with defendant's consent in response to the 911 call regarding the daughter, they were entitled to remain there while awaiting the warrant (*see generally People v Lubbe*, 58 AD3d 426, 426, *lv denied* 12 NY3d 818). In any event, the police had probable cause to believe that defendant was responsible for the daughter's condition and were therefore justified in securing the residence to prevent the removal or destruction of evidence (*see People v Osorio*, 34 AD3d 1271, 1272, *lv denied* 8 NY3d 883). The record establishes that no search occurred before the warrant arrived and that the police

entered defendant's home only to read the purported suicide note to the person preparing the search warrant application and to provide water to defendant's dogs (*see People v Pickney*, 90 AD3d 1313, 1316).

We reject defendant's contention that the court erred in permitting a police witness to testify that, when he questioned the daughter at the hospital, she denied that she had attempted to kill herself and denied that she had written a suicide note.  We conclude that the daughter's statements were admissible under the excited utterance exception to the hearsay rule because they were made shortly after she became coherent, i.e., "before there [had] been time to contrive and misrepresent" whether she had attempted to kill herself and written the purported suicide note (*People v Johnson*, 1 NY3d 302, 306 [internal quotation marks omitted]).  We also reject defendant's contention that the court erred in refusing to permit defendant's friend to testify with respect to a statement made by the daughter to defendant's friend inasmuch as that statement was too ambiguous to be considered a statement against penal interest (*see People v Simmons*, 84 AD3d 1120, 1121, *lv denied* 18 NY3d 928).  In any event, the daughter testified at trial, and thus that exception to the hearsay rule is inapplicable (*see People v Ennis*, 11 NY3d 403, 412, *cert denied* ___ US ___, 129 S Ct 2383).

Defendant failed to raise before the court her contention that its rulings on certain evidentiary issues deprived her of the right to present a defense, and she thus failed to preserve that contention for our review (*see People v Haddock*, 79 AD3d 1148, 1149, *lv denied* 16 NY3d 798; *see generally People v Gonzalez*, 54 NY2d 729, 730).  In any event, we conclude that defendant's contention is without merit.  Defendant also failed to preserve for our review her contention that her right of confrontation was violated by the People's failure to call as witnesses the technicians who performed toxicology tests (*see People v Liner*, 9 NY3d 856, 856-857, *rearg denied* 9 NY3d 941).  In any event, that contention also lacks merit.  The toxicology analysis performed by the technicians at independent laboratories involved making a "contemporaneous record of objective facts" and the results did not "directly link defendant to the crime[s]," but instead concerned only the substances ingested by the victims (*People v Freycinet*, 11 NY3d 38, 41).  Thus, it is not likely that the content of the reports was influenced by a pro-law-enforcement bias (*see id.*).  We therefore conclude that the toxicology evidence was not testimonial in nature, and defendant's right of confrontation was not implicated by the People's failure to call as witnesses the technicians who performed the toxicology tests (*see id.* at 42; *People v Meekins*, 10 NY3d 136, 158-160, *cert denied* ___ US ___, 129 S Ct 2856; *cf. People v Rawlins*, 10 NY3d 136, 157-158).

We agree with defendant that the court erred in permitting a police witness to testify in the People's direct case that, during the interview that took place on September 7, 2007, defendant invoked her right to remain silent (*see People v Capers*, 94 AD3d 1475, 1476; *see generally People v Basora*, 75 NY2d 992, 993).  We nevertheless conclude that the error is harmless beyond a reasonable doubt inasmuch as there is no reasonable possibility that the error might have

contributed to defendant's conviction (*see Capers*, 94 AD3d at 1476; *see generally People v Crimmins*, 36 NY2d 230, 237).

Defendant made only a general motion for a trial order of dismissal at the close of the People's case and failed in any event to renew her motion to dismiss following the close of her case. She thus failed to preserve for our review her contention that the circumstantial evidence of the attempted murder of the daughter is legally insufficient to support the conviction (*see People v Roman*, 85 AD3d 1630, 1630, *lv denied* 17 NY3d 821). In any event, we conclude that defendant's contention is without merit. The daughter denied that she had intentionally ingested pharmaceutical drugs mixed with alcohol. The daughter testified that, on the afternoon of September 13, 2007, defendant had prepared an alcoholic drink for her that tasted "horrible," and the daughter further testified that she thereafter went to bed because she felt ill. It is undisputed that the daughter did not leave her bedroom until she was taken by medical personnel to the hospital the following morning. Further, the daughter denied that she wrote a suicide note, and the evidence establishes that the drafts of the purported suicide note were written on September 11 and September 12, at times when the daughter was not at home. We therefore conclude that the conviction of attempted murder in the second degree is supported by legally sufficient evidence inasmuch as a rational trier of fact could determine that the elements of that crime were proven beyond a reasonable doubt (*see People v Rossey*, 89 NY2d 970, 971-972; *People v Bleakley*, 69 NY2d 490, 495). Viewing the evidence in light of the elements of the crime as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we further conclude that the verdict is not against the weight of the evidence with respect to the crime of attempted murder in the second degree (*see Bleakley*, 69 NY2d at 495).

We reject defendant's contention that the evidence presented by the People at trial changed the theory of the prosecution because it established that the daughter ingested drugs during the early morning hours of September 14, 2007. The indictment charged that defendant attempted to kill the daughter "on or about" September 13, 2007 "by poisoning her with a lethal combination of pharmaceutical substances that were mixed with an alcoholic beverage." We therefore conclude that defendant received fair notice of the allegations against her and that she was able to prepare a defense (*see People v Dawson*, 79 AD3d 1610, 1611, *lv denied* 16 NY3d 894).

We also reject defendant's contention that she was denied a fair trial by prosecutorial misconduct (*see People v Shaw*, 66 AD3d 1417, 1418, *lv denied* 14 NY3d 773). We have reviewed defendant's remaining contentions in appeal No. 1 and conclude that none requires modification or reversal of the judgment.

Addressing defendant's contentions in appeal No. 2, we agree with defendant that the court erred in summarily denying her CPL article 440 motion. In support of her motion, defendant contended that her indelible right to counsel attached on September 12, 2005, when the police contacted her attorney regarding the investigation of her

second husband's death, and thus that the police were prohibited from questioning her without counsel on September 7, 2007 (*see People v Grice*, 100 NY2d 318, 323; *People v Arthur*, 22 NY2d 325, 329).

As a preliminary matter, we agree with defendant that the court erred in determining that the issue regarding the alleged attachment of defendant's indelible right to counsel could have been raised in the direct appeal.  With respect to that issue, the record on the direct appeal establishes that, on September 12, 2005, the police requested that defendant provide her fingerprints as part of the investigation of her second husband's death.  When defendant advised the police that she had retained an attorney in connection with her second husband's estate, the police contacted the attorney with respect to their request for defendant's fingerprints.  Defendant also spoke with her attorney and thereafter agreed to cooperate with the police.  The right to counsel attaches in criminal matters only when the attorney represents the defendant in the criminal matter, and not solely in a civil matter (*see People v Lewie*, 17 NY3d 348, 361), and the record in the direct appeal here does not provide a sufficient basis for determining whether defendant's attorney represented her with respect to the investigation of her second husband's death or only with respect to his estate (*cf. People v Foster*, 72 AD3d 1652, 1653-1654, *lv dismissed* 15 NY3d 750; *People v Arena*, 69 AD3d 867, 868, *lv denied* 14 NY3d 838).  We therefore conclude that "the record [on the direct appeal] falls short of establishing conclusively the merit of defendant's claim," and thus that claim was properly raised by way of a motion pursuant to CPL 440.10 (*People v McLean*, 15 NY3d 117, 121).

We conclude that defendant's submissions in support of her motion raise a factual issue whether her indelible right to counsel attached in September 2005, thus requiring a hearing (*see generally People v Frazier*, 87 AD3d 1350, 1351).  We therefore reverse the order in appeal No. 2 and remit the matter to County Court to determine defendant's motion following a hearing on that issue (*see generally id.; People v Liggins*, 56 AD3d 1265, 1266).

Finally, contrary to defendant's further contention in appeal No. 2, she was not deprived of meaningful representation based upon defense counsel's failure to seek suppression of the September 7, 2007 statement on the additional ground that her indelible right to counsel had attached.  That single error does not constitute a sufficiently egregious error in an otherwise competent performance so as to deny defendant a fair trial (*see People v Cummings*, 16 NY3d 784, 785, *cert denied* ___ US___, 132 S Ct 203).

Entered:  October 5, 2012                          Frances E. Cafarell
                                                    Clerk of the Court