People v Ortega (2022 NY Slip Op 00828)





People v Ortega


2022 NY Slip Op 00828


Decided on February 08, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 08, 2022

Before: Renwick, J.P., Mazzarelli, Friedman, Singh, Pitt, JJ. 


Ind. No. 5112/12 Appeal No. 15240 Case No. 2019-4209 

[*1]The People of the State of New York, Respondent,
v
Yoselyn Ortega, Defendant-Appellant.


Robert S. Dean, Center for Appellate Litigation, New York (Abigail Everett of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Dana Poole of counsel), for respondent.



Judgment, Supreme Court, New York County (Gregory Carro, J.), rendered May 14, 2018, convicting defendant, after a jury trial, of two counts each of murder in the first and second degrees, and sentencing her to an aggregate term of life without parole, unanimously modified, on the law, to the extent of dismissing the second-degree murder counts, and otherwise affirmed.
The court properly denied defendant's motion to suppress statements to the police. The record supports the court's finding that the statements were spontaneous and thus did not require Miranda warnings. Spontaneity in the context of preinterrogation warnings turns on whether a statement made was the product of "express questioning or its functional equivalent" (Rhode Island v Innis, 446 US 291, 300-301 [1980]; see People v Bryant, 59 NY2d 786, 788 [1983]). After killing two children who had been in her care, and being confronted by the children's mother, defendant attempted suicide and injured her throat. While she was in custody, intubated and sedated at a hospital, she sought the attention of the officer guarding her by tapping on the bed railing, and mouthed that she had "something important to say to him." Defendant communicated by making sounds, mouthing words, and pointing at letters on an alphabet board. Although this difficult form of communication continued sporadically over two hours, the officer (who was not involved in the investigation) did not ask any questions except for asking defendant to verify that he had understood her, and did nothing to prompt or elicit statements on any subject. This was not the functional equivalent of interrogation (see e.g. People v Burton, 57 AD3d 261 [1st Dept 2008], lv denied 12 NY3d 781 [2009]), because the officer did nothing that was "reasonably likely to elicit an incriminating response" (Rhode Island v Innis, 446 US at 301). In fact, defendant did not make any statements about the homicide itself. The statements were spontaneous.
The court providently exercised its discretion in denying defendant's mistrial motion based on the prosecutor's cross-examination of one of the expert witnesses called by defendant in support of her defenses of insanity and lack of homicidal intent. The cross-examination was not so aggressive as to warrant reversal, given that this was a difficult witness who often failed or refused to give responsive answers. We do not find that the cross-examination was unduly prejudicial to defendant's defense.
While some of the testimony should not have been admitted, the Court did not err in denying defendant's mistrial motion based on testimony from the children's father that allegedly appealed to the jurors' sympathy. While some of this testimony was not directly relevant, it did not deprive defendant of a fair trial under all the circumstances. The facts of the crime were so egregious that the challenged testimony, such as the father's description of his last moments with his dead children, would not have evoked [*2]a meaningfully stronger emotional response than did the evidence of the crime. Furthermore, the court's curative instructions, repeated throughout the trial, were sufficient to minimize any prejudice.
The court providently exercised its discretion in giving a complete charge, in accordance with the Criminal Jury Instructions, on the affirmative defense of lack of criminal responsibility as a result of mental disease or defect, while also instructing the jury that defendant was relying on only one prong of that defense. Under Penal Law § 40.15, defendant would lack criminal responsibility if she lacked substantial capacity to know or appreciate either the nature and consequences of her conduct, or that her conduct was wrong. Her defense relied solely on the "nature and consequences" prong, and the court made this limitation clear to the jury. The defendant has not demonstrated any prejudice from the way in which the court structured its charge. Defendant's related challenge to the prosecutor's summation is unavailing, because the challenged portions of the summation also acknowledged defendant's reliance on the "nature and consequences" prong, and were otherwise fair comment on the evidence.
The court responded meaningfully to a jury note requesting the "legal definition of the word conscious and how it differs from understanding" when it stated that the terms had no legal definition but only their "ordinary meaning," and that "conscious is being aware." The court was not required to go beyond the specific question posed by the jury (see People v Almodovar, 62 NY2d 126, 131 [1984]; People v Malloy, 55 NY2d 296 [1982], cert denied 459 US 847 [1982]). The note did not call for an explanation of the relationship between the insanity defense and the element of intent, nor did it necessitate a rereading of any part of the main charge. Furthermore, the jury did not ask for further clarification, and there is no indication that the court's response caused any prejudice (see People v Lourido, 70 NY2d 428, 435 [1987]).
"Defendant's right of confrontation was not violated when an autopsy report prepared by a former medical examiner, who did not testify, was introduced through the testimony of another medical examiner" (People v Acevedo, 112 AD3d 454, 455 [1st Dept 2013], lv denied 23 NY3d 1017 [2014]). The report was not testimonial, because it "[did] not link the commission of the crime to a particular person" (People v John, 27 NY3d 294, 315 [2016]; see People v Freycinet, 11 NY3d 38, 42 [2008]). In any event, any error was harmless under the standards for constitutional error (see People v Crimmins, 36 NY2d 230 [1975]). The cause of death was undisputed. Nothing in the autopsy report had any bearing on defendant's defenses of insanity and lack of intent, and to the extent anything in it could be viewed as such, it was cumulative to evidence already before the jury (compare Garlick v Lee, 1 F4th 122, 136 [2d Cir 2021] [autopsy report was "strongest evidence[*3]" and was "not cumulative"]).
Defendant did not preserve her remaining arguments for reversal, including those related to the following issues: the prosecutor's voir dire of the above-discussed defense expert; allegedly inflammatory or sympathy-evoking testimony or conduct by witnesses other than the children's father; testimony by the parents about defendant's mental state; a detective's rebuttal testimony; and the prosecutor's summation comments on potential defense witnesses who were not called. We decline to review these unpreserved arguments in the interest of justice. As an alternative holding, we find no ground for reversal under all the facts and circumstances.
As the People concede, the second-degree murder counts should be dismissed as inclusory concurrent counts of the first-degree murder counts (see CPL 300.40[3][b]).
We perceive no basis for reducing the sentence.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: February 8, 2022