People v Fernandez (2022 NY Slip Op 06137)

People v Fernandez

2022 NY Slip Op 06137

Decided on November 2, 2022

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 2, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
JOSEPH J. MALTESE
LINDA CHRISTOPHER
JANICE A. TAYLOR, JJ.

2021-00515
 (Ind. No. 9684/16)

[*1]The People of the State of New York, respondent,
v
Andres Fernandez, appellant.

Roger Bennet Adler, P.C., New York, NY, for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove, Sholom J. Twersky, and Jordan Cerruti of counsel), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Danny K. Chun, J.), rendered October 19, 2020, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, without a hearing, of the defendant's motion to controvert a search warrant and suppress physical evidence seized in the execution thereof.
ORDERED that the judgment is affirmed.
Contrary to the defendant's contention, the Supreme Court properly denied his motion to controvert the search warrant dated October 21, 2016, and suppress physical evidence seized in the execution thereof. "There is a strong judicial preference for search warrants" (People v Corr, 28 AD3d 574, 575). "The search warrant application must provide the court with sufficient information to support a reasonable belief that evidence of illegal activity will be present at the specific time and place of the search" (id. at 575; see People v Bigelow, 66 NY2d 417, 423). Here, an affidavit by a special agent with the Federal Bureau of Investigation in support of the search warrant detailed the agent's personal knowledge and investigation of a murder, including discussions with detectives in the New York City Police Department and other law enforcement agencies. The affidavit further related the agent's own review of surveillance video relevant to the identity of the perpetrator and to the vehicle in which he escaped. There was, therefore, probable cause to issue the search warrant (see People v Bigelow, 66 NY2d 417; People v Durante, 131 AD2d 499). Moreover, the search warrant particularly described the items to be seized, including clothing worn by the defendant at the time of the offense (see People v Nieves, 36 NY2d 396; People v Durante, 131 AD2d 499), as well as any additional items related to violations of 18 USC §§ 924(j), 1951, 1958, and 1959 (see Andresen v Maryland, 427 US 463; see also People v Duval, 36 NY3d 384). Therefore, the search warrant was not overly broad or ambiguous and did not authorize a general, exploratory search (see generally Coolidge v New Hampshire, 403 US 443, 467).
The defendant's contention that the search warrant was stale because of the four-month delay between the commission of the crime and the issuance and execution of the warrant is not preserved for appellate review (see CPL 470.05[2]; People v Ming, 35 AD3d 962). In any event, the contention is without merit. A search warrant must be based upon information close enough in [*2]time to its issuance to "justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case" (People v Padilla, 132 AD2d 578, 578 [internal quotation marks omitted]; see People v Manngard, 275 AD2d 378). Here, considering all of the relevant circumstances, including the nature of the property to be seized, namely, the defendant's clothing worn at the time of the murder, the car in which he escaped, and weapons, the information provided in the affidavit was not stale for the purposes of establishing probable cause (see People v Walker, 285 AD2d 660; People v Freitag, 148 AD2d 544). The defendant's further contention that the officers executing the search warrant exceeded the parameters of the warrant in their search is without merit (see People v Reyes, 121 AD3d 820).
The defendant's challenge to the legal sufficiency of the evidence supporting his convictions is unpreserved for appellate review (see CPL 470.05[2]). In any event, viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342, 348), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383; People v Bleakley, 69 NY2d 490, 495). Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence (see People v Romero, 7 NY3d 633).
The defendant's contention that the admission of an autopsy report written by Rafael A. Garcia, who did not testify at trial, violated his right of confrontation is unpreserved for appellate review (see CPL 470.05[2]). In any event, the factual information contained in the autopsy report did not constitute testimonial evidence (see People v John, 27 NY3d 294, 315; People v Freycinet, 11 NY3d 38, 42). At the time of trial, Garcia was no longer employed by the Office of the Chief Medical Examiner, resided out of state, and was otherwise unavailable to testify. Nonetheless, Garcia's report was admitted upon the testimony of another physician employed by the Office of the Chief Medical Examiner, who, while he did not perform the autopsy or have any part in the preparation of the report, conducted an independent review of the findings and formed his own opinion as to the cause and manner of death (see People v Freycinet, 11 NY3d 38). Moreover, we are satisfied that the evidence of the defendant's guilt, without reference to any error in admitting the report, was overwhelming, and there is no reasonable possibility that any error in admitting the opinions of Garcia as to the cause and manner of death contributed to the defendant's convictions. Thus, any error was harmless beyond a reasonable doubt (see People v Hardy, 4 NY3d 192, 198; People v Crimmins, 36 NY2d 230, 237; People v Herb, 110 AD3d 829, 831).
Contrary to the defendant's contention, he was not deprived of a fair trial when the Supreme Court permitted his former girlfriend, with whom he had lived and had three children, to testify that she believed the defendant to be the person depicted in a surveillance video, as there was a basis for concluding that his former girlfriend was more likely than the jury to correctly identify the defendant in a video (see People v Russell, 79 NY2d 1024, 1025; People v Minchala, 194 AD3d 754; People v Franzese, 154 AD3d 706; People v Thomas, 139 AD3d 764).
Furthermore, the Supreme Court providently exercised its discretion in admitting into evidence a compilation video containing footage compiled from various surveillance videos. The creator of the compilation video explained the compilation process and explained that the additions to the video, such as the insertion of time and date captions, circles, and arrows, merely highlighted portions of the video rather than changed the substance of the video (see People v Yanez, 180 AD3d 816; People v Clayfield, 155 AD3d 1682). Further, the compilation video was admitted into evidence only after the original surveillance videos were admitted.
The defendant's contention that the Supreme Court erred in admitting cellular phone tracking evidence without first holding a Frye hearing (Frye v United States, 293 F 1013 [DC Cir]) is unpreserved for appellate review (see CPL 470.05[2]; People v Bowers, 148 AD3d 1042, 1044). In any event, no Frye hearing was necessary because the evidence proffered by the prosecution did not concern a novel scientific theory, technique, or procedure, but instead involved deductions made [*3]from cell phone site data in a manner consistent with a generally accepted scientific process upon which courts have previously relied (see People v Clayton, 175 AD3d 963; People v Littlejohn, 112 AD3d 67, 73; see generally People v Arafat, 13 NY3d 460, 463-464).
The defendant's contention that the admission of a copy of a business card which disclosed on its reverse side the victim's address, found in the defendant's home as a result of the search, violated the best evidence rule is unpreserved for appellate review (see CPL 470.05[2]; People v Steinhilber, 133 AD3d 798; People v Vickio, 50 AD3d 1479). In any event, the best evidence rule did not apply because there was no dispute as to the contents of the business card (see Schozer v William Penn Life Ins. Co. of N.Y., 84 NY2d 639, 643; People v Javier, 154 AD3d 445; Billingy v Blagrove, 84 AD3d 848; Rotanelli v Longo, 210 AD2d 392).
Contrary to the defendant's contention, the Supreme Court did not rule that two law enforcement officers were permitted to testify that it appeared that the person depicted in a surveillance video was carrying a firearm. Rather, the court permitted the officers to testify that there was something unusual about the body position and the walk of the individual in the video, and that, in the officers' experience, when they or other law enforcement officers carried firearms without a holster, they held the firearm in a certain manner. Such testimony was, therefore, based on professional knowledge and skill not within the range of ordinary training or intelligence (see People v Cronin, 60 NY2d 430, 432). Furthermore, the jury watched the surveillance video multiple times and was provided with the video during its deliberations. The court further instructed the jury that it was the sole judge of the facts and inferences to be drawn from the evidence.
The defendant's contention that he was deprived of a fair trial by certain comments of the prosecutor during summation is without merit. The challenged comments were fair response to arguments made by defense counsel in summation (see People v Galloway, 54 NY2d 396; People v Lopez-Miralles, 153 AD3d 936; People v Alphonso, 144 AD3d 1168; People v Herb, 110 AD3d at 831; People v Gross, 88 AD3d 905, 906).
Contrary to the defendant's contention, the Supreme Court properly sustained several objections made by the People during the defense summation on the ground that defense counsel was misstating the law by suggesting that motive was an element of the crime of murder in the second degree (see People v Mitchell, 117 AD3d 971), and on the additional ground that defense counsel was encouraging the jury to make unreasonable inferences unsupported by the record (see generally People v Ashwal, 39 NY2d 105, 110).
The defendant's contention that he was deprived of his right to have counsel present during his presentencing interview is without merit (see People v Brinkley, 174 AD3d 1159, 1166-1167; People v McNamara, 103 AD3d 1273; People v Cortijo, 291 AD2d 352).
The defendant's remaining contentions are without merit.
Accordingly, we affirm the defendant's judgment of conviction.
DUFFY, J.P., MALTESE, CHRISTOPHER and TAYLOR, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court