# State of New York Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports

No. 76
The People &c.,
     Respondent,
    v.
Jorge Espinosa,
     Appellant.

Samuel Feldman, for appellant.
Amanda Iannuzzi, for respondent.
The Legal Aid Society, amicus curiae.

MEMORANDUM:

The order of the Appellate Division should be affirmed.

- 1 -

Defendant asserts that trial counsel rendered ineffective assistance by failing to argue that the admission into evidence of DNA reports through the testimony of an analyst who did not perform, witness or supervise the testing, or independently analyze the raw data, violated his constitutional right to confrontation. This argument is without merit. "Even assuming that counsel failed to assert a meritorious Confrontation Clause challenge, the alleged omission does not 'involve an issue that [was] so clear-cut and dispositive that no reasonable defense counsel would have failed to assert it'" (*People v Rodriguez*, 31 NY3d 1067, 1068 [2018], quoting *People v McGee*, 20 NY3d 513, 518 [2013]). Nor, on this record, has defendant demonstrated that the alleged error was not a matter of legitimate trial strategy (*see id.*).

RIVERA, J. (dissenting):

In 2016, defendant Jorge Espinosa was convicted of second-degree burglary and several misdemeanors based on allegations that he forcibly entered a New York City

- 1 -

apartment with a co-defendant who stole money from a wallet. At trial, the prosecution admitted two reports containing DNA analyses through a criminalist who testified, based on his review of the file prepared by another criminalist, that defendant's DNA matched DNA on a screwdriver recovered from the scene of the break-in. This evidence was therefore admitted through a surrogate witness in violation of the Confrontation Clause (*Bullcoming v New Mexico*, 564 US 647 [2011]; *Crawford v Washington*, 541 US 36 [2004]). The question on this appeal is whether defense counsel was ineffective for failing to raise a Confrontation Clause objection to this evidence's admission. At the time of defendant's trial, the law was sufficiently settled to support such an objection. Indeed, counsel recognized that the basis for the testifying criminalist's conclusions was vulnerable to attack, as he asked the jury to reject those conclusions on the ground that the criminalist did not conduct the DNA testing. Given that the prosecution's entire case rested upon this DNA evidence, counsel's failure to challenge this evidence on Confrontation Clause grounds cannot be explained as a reasonable strategy. Therefore, I would reverse and order a new trial.

I.

Defendant was prosecuted on charges arising from a New York City apartment break-in. One resident saw a man going through his wallet before running towards the back of the apartment. Another resident entered the home and bumped into a man wearing a ski mask—who she had "a gut feeling" was Latino—run out of the building and down the street. She then noticed another man jump off the upstairs balcony; this other man was

arrested that night and eventually pleaded guilty to second-degree burglary. Defendant was arrested months after the crime when the City's Office of Chief Medical Examiner (OCME) notified investigators that his DNA matched a DNA profile developed from a screwdriver recovered from an outdoor patio located underneath the balcony from which the other man had jumped. Neither resident knew defendant or ever identified him as having been at the scene of the burglary. Thus, the entire case against defendant depended on this DNA evidence.

The prosecution presented testimony from an OCME criminalist, Daniel Ferrara, and, through him, admitted two DNA reports. The first report was based on the swab from the screwdriver and listed defendant under "SUSPECT(S)." The other report was based on a DNA buccal swab sample the police obtained from defendant in an unrelated 2006 case and stated that "[t]he DNA alleles from the suspect, Jorge Espinosa, are the same as those of the DNA donor identified in" that previous case. Ferrara did not participate in any of the DNA testing in the instant case. Instead, as he explained during direct examination, a former OCME employee named Ashley Rhodes was "the reporting analyst" who performed the testing and interpretive analysis, rendered the conclusions, and wrote the report. By the time of trial, Rhodes no longer worked for OCME, so Ferrara reviewed the file and Rhodes's conclusions.

Ferrara testified that he had been Rhodes's supervisor and the "technical reviewer" in this case, meaning that he "[went] through all the results, look[ed] at the testing and ma[de] sure it [wa]s scientifically sound and based on policies and procedures." Although he had supervised "thousands" of DNA analyses before, he did not testify that he

supervised Rhodes' analysis here. Rather, Ferrara acknowledged that his "opinion conclusion" was "based on [his] own review of the business record"—i.e., Rhodes's report. Neither Ferrara's name nor his initials were in the portion of the report covering the electrophoresis stage of the analysis.[1]

Rhodes' analysis concluded that the screwdriver contained a mixture of DNA which, when compared against DNA collected during the earlier, unrelated case, revealed a match with defendant's DNA. The prosecution did not present any testimony regarding who collected and analyzed the DNA in the prior case, and Ferrara did not testify that he was in any way connected to it. Ferrara's name did not appear in the 2007 report, which placed defendant's name in a field labeled "Suspect."

Defense counsel failed to object to the DNA reports' admission and Ferrara's testimony but did cross-examine Ferrara about his lack of involvement in the testing and analysis of the DNA. Ferrara acknowledged that he was "not the person who did the testing" and "personally did not do any of the testing in this case" but that he instead had "read the reports prepared by other people." Ferrara testified that "Ashley Rhodes wrote

---

[1] Ferrara's name appears four times in the DNA report, related to reviews conducted on two dates—July 14, 2014, and August 1, 2014—where his name is in a box labeled, "Report Tech1 Reviewed By Daniel Ferrara." The initials "DAF" appear throughout the report for the 2006 case, but there is no evidence in the record confirming that those were Ferrara's initials.

the report and made her conclusions. [He] technically reviewed those conclusions and that is how the report came to be."

During his summation, defense counsel argued to the jury that the DNA evidence was "incomplete" and "insufficient" because the prosecution failed to call the person who conducted the DNA testing and instead "called the supervisor who submitted the report" whose conclusions therefore should not be credited. For their part, the prosecutor relied heavily on the DNA evidence, arguing: "He chose to use a screwdriver. How do we know he used it? Well, his DNA is all over that screwdriver." The prosecutor also repeated a theme first raised during opening statements, exhorting that defendant "can't run away from his own DNA."

The jury convicted defendant on all counts and the court sentenced him to an aggregate of 15 years incarceration, followed by five years of post-release supervision.

The Appellate Division affirmed the judgment of conviction (207 AD3d 655, 656 [2022]). The Court concluded that Ferrara's testimony did not violate defendant's right of confrontation and therefore defendant was not deprived of his right to the effective assistance of counsel when his attorney failed to object to the testimony on Confrontation Clause grounds (*id.*). A Judge of this Court granted defendant leave to appeal (39 NY3d 962). We should reverse because defense counsel should have objected based on the law established at the time of trial that the prosecution could not present DNA evidence through the testimony of a criminalist like Ferrara who was not involved in any stage of the DNA analysis and merely served as a conduit for the work of others.

II.

A.

Under the Sixth Amendment to the Federal Constitution, defense counsel is ineffective when their performance falls below "an objective standard of reasonableness" and prejudices the defendant (*Strickland v Washington*, 466 US 668, 688 [1984]). Under Article I, Section 6 of the New York Constitution, a defendant is denied effective counsel when the circumstances, "viewed in totality," show that the attorney did not provide "meaningful representation" (*People v Benevento*, 91 NY2d 708, 712 [1998]), a standard that the Court has characterized as "somewhat more favorable to defendants" and which, like the federal standard, requires an initial showing of objective unreasonableness (*People v Turner*, 5 NY3d 479, 480 [2005]). Thus, conduct found deficient under the federal standard also constitutes ineffectiveness under our State standard (*see People v Wragg*, 26 NY3d 403, 412 [2015] [rejecting defendant's state-based ineffective assistance claim "(s)ince 'our state standard . . . offers greater protection than the federal test' "], quoting *People v Caban*, 5 NY3d 143, 156 [2005]).

An attorney who performs in an objectively reasonable fashion is one who "take[s] the time to review and prepare both the law and the facts relevant to the defense" (*People v Droz*, 39 NY2d 457, 462 [1976]). On the other hand, counsel performs deficiently where, due to an unreasonable mistake of law or failure to perform research, counsel overlooks a viable claim and no plausible strategy explains the apparent oversight (*see Hinton v Alabama*, 571 US 263, 274 [2014] ["An attorney's ignorance of a point of law that is

fundamental to (their) case combined with (their) failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*"]).

To establish prejudice under the federal standard, the defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland*, 466 US at 693-694). "[A] defendant need not establish that the attorney's deficient performance more likely than not altered the outcome" (*Nix v Whiteside*, 475 US 157, 175 [1986]), only a reasonable probability of an impact on the verdict "sufficient to undermine confidence in the outcome" (*Strickland*, 466 US at 693-694). By contrast, the state standard "does not require the defendant to fully satisfy the prejudice test of *Strickland*" even though the Court "continue[s] to regard a defendant's showing of prejudice as a significant but not indispensable element in assessing meaningful representation" (*Caban*, 5 NY3d at 155-156 [internal quotation marks omitted]). "Our focus is on the fairness of the proceedings as a whole" (*People v Stultz*, 2 NY3d 277, 282 [2004]).

Under both standards, a single error may qualify as ineffective assistance (*see Murray v Carrier*, 477 US 478, 496 [1986] [observing that the right to effective assistance "may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial"]; *People v Hobot*, 84 NY2d 1021, 1022 [1995] ["Where a single, substantial error by counsel so seriously compromises a defendant's right to a fair trial, it will qualify as ineffective representation"]; *see also Turner*, 5 NY3d at 480, citing *Caban*, 5 NY3d at 152; *Murray*, 477 US at 496). Where a defendant complains that counsel failed to raise a claim, the claim must typically involve "an issue that is so clear-cut

and dispositive that no reasonable defense counsel would have failed to assert it, and it must be evident that the decision to forgo the contention could not have been grounded in a legitimate trial strategy" (*People v McGee*, 20 NY3d 513, 518 [2013]; *see e.g. Turner*, 5 NY3d at 481 [holding that an attorney who objected to submission of a lesser-included count, but failed to raise a "clear-cut and completely dispositive" statute of limitations defense to that same count was ineffective]). A "[d]efendant bears the burden of establishing [their] claim that counsel's performance is constitutionally deficient by demonstrating the absence of strategic or other legitimate explanations for counsel's alleged failures" (*People v Sposito*, 30 NY3d 1110, 1111 [2018] [cleaned up]), and "counsel's performance is objectively evaluated to determine whether it was consistent with strategic decisions of a reasonably competent attorney" (*People v Mendoza*, 33 NY3d 414, 418 [2019]). Overall, ineffectiveness must be assessed "as of the time of representation" (*People v Carncross*, 14 NY3d 319, 331 [2010]).

The law on an omitted claim need not be "definitively settled" at the time of trial and the claim need not be "a clear winner" before its omission can qualify as ineffective assistance (*Turner*, 5 NY3d at 483). Recently, we held that, in such single-error cases, there must be some "clear appellate authority" supporting the omitted claim (*People v Saenger*, 39 NY3d 433, 442 [2023]). Counsel is not constitutionally ineffective simply for failing to raise a claim having had "nothing to lose" (*Knowles v Mirzayance*, 556 US 111, 122 [2009]), but is ineffective in foregoing a claim supported by clear appellate authority when "no reasonable defense lawyer could have found it so weak as to be not worth raising" (*Turner*, 5 NY3d at 483).

B.

In addition to decisional law and state professional rules, the United States Supreme Court and this Court look to professional norms in assessing defense counsel's effectiveness (*see Strickland*, 466 US at 688; *Hurrell-Harring v State of NY*, 15 NY3d 8, 18 [2010]). "[P]revailing norms of practice as reflected in American Bar Association standards and the like . . . are guides to determining what is reasonable . . . [because] these standards may be valuable measures of the prevailing professional norms of effective representation" (*Padilla v Kentucky*, 559 US 356, 366 [2010] [internal citations omitted]; *e.g. People v Clark*, 28 NY3d 556, 563 [2016] [looking to ABA Standards to determine whether counsel was ineffective for declining to pursue a justification defense at the defendant's insistence]; *see also People v Arjune*, 30 NY3d 347, 367-368 [2017] [Rivera, J., dissenting] [professional norms relevant in determining whether counsel was ineffective for, after filing a notice of appeal, failing to either perfect the appeal advise the defendant of how to do so, resulting in the appeal's dismissal]).

III.

Defendant argues, as he did before the Appellate Division, that the DNA reports are testimonial, and that defense counsel was ineffective for failing to object to the DNA

evidence on the ground that Ferrara served as a surrogate witness for its admission in violation of defendant's right of confrontation. Defendant is correct on all points.

A.

The Confrontation Clause of the Sixth Amendment guarantees criminal defendants the right to be "confronted with the witnesses against [them]" (US Const, Amend VI), and "[t]his bedrock procedural guarantee applies to both federal and state prosecutions" (*Crawford*, 541 US at 42, citing *Pointer v Texas*, 380 US 400, 406 [1965]). As the Supreme Court has noted, "[t]he right to confront one's accusers is a concept that dates back to Roman times" (*id.*). The *Crawford* Court observed that the Confrontation Clause "applies to 'witnesses' against the accused," meaning "those who bear testimony . . . for the purpose of establishing or proving some fact" (*id.* at 51 [internal citation and quotation marks omitted]). Out-of-court testimonial statements are admissible under the Confrontation Clause only when the declarant is "unavailable to testify, and the defendant [had] had a prior opportunity for cross-examination" (*id.* at 54). The Supreme Court has included within the "core class of testimonial statements . . . pretrial statements that the declarant would reasonably expect to be used prosecutorially, extrajudicial statements . . . contained in formalized testimonial materials . . . [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" (*id.* at 51-52).

In 2009, in *Melendez-Diaz* the Supreme Court concluded that formal forensic reports—such as the narcotics report at issue there—are testimonial for purposes of the Confrontation Clause (557 US at 310, quoting *Crawford*, 541 US at 51). A forensic report

is "incontrovertibly a 'solemn declaration or affirmation made for the purpose of establishing or proving some fact' " (*id.*, quoting *Crawford*, 541 US at 51). In other words, the report at issue in that case was "the precise testimony" that the witness "would be expected to provide if called at trial" (*id.*). Critically, the Court rejected the claim that the Confrontation Clause applies only to statements that "directly accuse [defendants] of wrongdoing[,]" noting that such view "finds no support in the Sixth Amendment or in [its] case law" and, indeed, "would be contrary to longstanding case law" (*id.* at 313-315, citing *Kirby v United States*, 174 US 47, 53-55 [1899]). As the Court explained, there is no "category of witnesses, helpful to the prosecution, but somehow immune from confrontation" (*id.*). "To the extent the analysts were witnesses"— because their statements were testimonial—"they certainly provided testimony against [the defendant], proving one fact necessary for his conviction—that the substance he possessed was cocaine" (*id.* at 313 [emphasis in original]).

In 2011, the Supreme Court reaffirmed *Melendez-Diaz* in *Bullcoming* and further held that, under the Confrontation Clause, "a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification" was inadmissible "surrogate testimony" that deprived the accused of the "right to be confronted by the analyst who made the certification" (564 US at 652). Moreover, the Court concluded, "the Clause does not tolerate dispensing with confrontation simply because the court believes that questioning one witness about another's testimonial statements provides a fair enough opportunity for cross-examination"

(*id.* at 662). Thus, at the time of defendant's 2016 trial, the DNA evidence proffered by the prosecution fell squarely within the Supreme Court's description of testimonial evidence subject to confrontation and the evidence offered through Ferrara—who did not prepare the file, "perform or observe the test[,]" or conduct an independent analysis of the DNA samples—was "surrogate testimony of [an] order [that] does not meet the constitutional requirement" (*id.* at 652).

The prosecution argues that our decision in *People v Brown* (13 NY3d 332 [2009]) was controlling at the time of defendant's trial and made clear that the Confrontation Clause did not apply to reports compiled before a defendant became a suspect. Here, the prosecution continues, the DNA match was based on a DNA profile developed in an unrelated matter years before defendant was a suspect in the underlying burglary and, therefore, under *Brown*, Ferrara's testimony satisfied the Confrontation Clause. This argument fails. First, the defendant's status as a non-suspect in *Brown* was not the primary focus of *Brown's* holding (*see* 13 NY3d at 340). Rather, the *Brown* Court concluded that the DNA report there "was not testimonial because it consisted of machine-generated graphs, charts and numerical data" that did not reflect the analyst's conclusions or interpretations (*id.* [internal quotation marks omitted]). In any event, the Supreme Court decided *Bullcoming* two years after *Brown* and nearly five years before defendant's trial. Counsel should have been aware of this binding Supreme Court precedent that the Sixth Amendment guarantees defendants the right to be confronted by the individuals who performed the analysis and rendered conclusions, not a "surrogate" like Ferrara, who merely relays the analyses and conclusions of others (*Bullcoming*, 564 US at 652).

The prosecution's reliance on *Williams v Illinois* (567 US 50 [2012]) is similarly unpersuasive. *Williams* involved a forensic expert who testified that a DNA profile generated by an outside laboratory based on evidence collected as part of a rape kit matched the defendant's DNA profile that was already in the government's possession as part of an earlier, unrelated case (*see id.* at 56). A plurality of the Court concluded that "[o]ut-of-court statements that are related by [a testifying] expert solely for the purpose of explaining the assumptions on which [the expert's] opinion rests" are not subject to confrontation, in relevant part, because they are "not prepared for the primary purpose of accusing a targeted individual" (*id.* at 58, 84).[2] Justice Thomas concurred only in the judgment, agreeing that the Confrontation Clause did not cover the underlying DNA profile, but on the basis— which no other Justice endorsed—that the profile was "not a statement by a witness within the meaning of the Confrontation Clause" because it lacked "the solemnity of an affidavit or deposition" (*id.* at 111 [Thomas, J., concurring] [internal quotation marks and alteration omitted]).

---

[2] The plurality alternatively concluded that the outside laboratory's profile was not offered for its truth and therefore was not testimonial (*Williams*, 567 US at 57-58). Five justices squarely rejected this view (*see id.* at 105-110 [Thomas, J. concurring], 125-130 [Kagan, J., dissenting]), and this Court had previously rejected the same several years prior to defendant's trial (*see People v Goldstein*, 6 NY3d 119, 128 [2005] [holding that statements from third parties familiar with the defendant made to an expert psychiatrist were offered for their truth because one could "not see how the jury could use the statements of the interviewees to evaluate (the psychiatrist's) opinion without accepting as a premise either that the statements were true or that they were false"]; *see also id.* ["The distinction between a statement offered for its truth and a statement offered to shed light on an expert's opinion is not meaningful"]).

Justice Thomas squarely rejected the plurality's targeted-individual test (*see id.* at 114 ["There is no textual justification . . . for limiting the confrontation right to statements made after the accused's identity became known"]). So too did Justice Kagan who, joined by three other Justices, dissented, but agreed with Justice Thomas that none of the Court's prior cases had held that a testimonial statement "must be meant to accuse a previously identified individual" and that the plurality's targeted-individual test "derives neither from the text nor from the history of the Confrontation Clause" (*id.* at 135 [Kagan, J., dissenting]). Thus, before defendant's 2016 trial, a majority of the Justices specifically rejected the targeted-individual test the prosecution argues controlled at the time.

Indeed, at the time of trial, several federal and state courts had concluded that *Williams* did not establish any controlling rule (*see United States v James*, 712 F3d 79, 95-96 [2d Cir 2013] [concluding that, as "five Justices disagreed with" the *Williams* plurality's "narrowed definition of testimonial" "and it would appear to conflict directly with *Melendez-Diaz*," *Williams* did not "yield a single, useful holding"]; *United States v Duron-Caldera*, 737 F3d 988, 994-995 [5th Cir 2013] [declining to adopt targeted-individual test and noting the *Williams* plurality is not "controlling"]; *Jenkins v United States*, 75 A3d 174, 176 [DC 2013] [noting that *Williams* yielded "no new rule of law"]; *State v Stanfield*, 158 Idaho 327, 366, 347 P3d 175, 185 [2015] ["Because no position received support from a majority of the justices, *Williams* does not provide us a governing legal principle"]; *State v Maxwell*, 139 Ohio St 3d 12, 24, 9 NE3d 930, 950 [2014] [noting "five justices in *Williams* rejected the plurality's narrowed definition of the primary-purpose test (the targeted-individual test)," and rejecting use of that "narrowed

definition"]).   Thus, at the time of defendant's trial, the "clear appellate authority" established in *Melendez-Diaz* and *Bullcoming* controlled and supported a Confrontation Clause objection (*Saenger*, 39 NY3d at 442).

Even assuming the Supreme Court had not provided a clear basis for a Confrontation Clause challenge to the admission of the reports and Ferrara's testimony, there was "clear appellate authority" from our state courts supporting one (*id.*). Counsel could have relied on *People v Cartagena* where, post-*Brown* (13 NY3d 332), the Appellate Division, Second Department—the intermediate appellate court to which defendant here would appeal— held that the defendant's "rights under the Confrontation Clause of the Sixth Amendment were violated when the Supreme Court admitted a nontestifying DNA analyst's report linking the defendant to DNA evidence recovered at the crime scene" (126 AD3d 913 [2d Dept 2015]); *see also People v Gonzalez*, 120 AD3d 832 [2d Dept 2014] [same, but conceded by the prosecution]).

In addition, defendant's trial began after full briefing and oral arguments in *People v John* (27 NY3d 294 [2016]) and, although we did not decide *John* until after defendant's conviction, defense counsel had a continuing obligation throughout his representation to "take[ ] the time to review and prepare both the law and the facts relevant to the defense" (*Droz*, 39 NY2d at 462), and "stay abreast of changes and developments in the law" (National Legal Aid and Defender Association, Performance Guidelines for Criminal Defense Representation § 1.2 [2006]). This continuing obligation also included "a duty to be well-informed regarding the legal options and developments that can affect a client's interests during a criminal representation" and "a duty to continually evaluate the impact

that each decision or action may have at later stages, including . . . post-conviction review" (ABA Standards for Criminal Justice, Defense Function 4-1.3 [e], [f] [4th ed 2017]).

Defense counsel's failure to object could not have been part of a "legitimate trial strategy" (*McGee*, 20 NY3d at 518). Ferrara admitted on direct and cross examination that he was not involved at all in the DNA testing that produced the two reports admitted at trial, nor did he independently analyze any of their raw data. True, defense counsel drew on these acknowledgments in an attempt to persuade the jury to reject the evidence but, by then, the damage had been done; the reports were admitted into evidence and the jury had heard Ferrara's testimony. In a case that turned on the DNA evidence, defense counsel inexplicably failed to take the singular preventive step available to him—object to the admission of this powerful DNA evidence on confrontation grounds—despite the "clear appellate authority" supporting it (*Saenger*, 39 NY3d at 442). Under these circumstances, defendant was deprived of effective assistance of counsel.

## B.

The majority erroneously concludes that our decision in *People v Rodriguez* (31 NY3d 1067 [2018]) controls this case and compels the conclusion that defense counsel here was not ineffective (majority mem at 2). That conclusion is mistaken. First, we issued that one-paragraph memorandum more than two years after defendant's trial and thus it could not have dissuaded counsel from raising a Confrontation Clause objection to the DNA evidence—the only question relevant to deciding whether counsel was ineffective.

Second, *Rodriguez* is distinguishable in meaningful ways. There, the Appellate Division concluded that the defendant's Confrontation Clause claim was unpreserved and

declined to review it under that Court's interest of justice jurisdiction (*People v Rodriguez*, 153 AD3d 235, 238 [1st Dept 2017]). The majority nonetheless, in pure dicta, addressed the merits and concluded that the prosecution's failure to call the criminalists who generated two DNA profiles on which the testifying criminalist relied to determine that the defendant's DNA was present on a pair of wire cutters used to commit the underlying burglary did not violate the Confrontation Clause (*id.* at 247). The Court explained that, in response to the prosecutor's pretrial motion for a ruling on the introduction of DNA testing, the defense counsel "argued against the introduction of reports of conclusions reached by nontestifying examiners, and urged that the admissible evidence from OCME's files should be limited to the pages of documents reflecting raw data that had been personally reviewed and initialed by" the proffered criminalist witness (*id.* at 239). The majority further explained that the testifying criminalist "performed an independent review of the raw data generated by the testing analysts," distinguishing her testimony from what this Court found insufficient in *John* (*id.* at 245-246, citing 27 NY3d at 312-313). According to the Court, the criminalist's conclusions were instead "based upon her own 'separate, independent and unbiased analysis of the raw data,' [ ]as reflected in the OCME laboratory report bearing her name as analyst as well as in her own testimony at trial" (*id.* at 246, quoting *John*, 27 NY3d at 311). In addition, as defendant here points out, the defense counsel in *Rodriguez* subpoenaed the raw data and employed their own forensic DNA expert to review it (*see* brief for respondent [*People v Rodriguez*, 31 NY3d at 1067] at 3, 8).

The Appellate Division's description of defense counsel's actions in *Rodriguez* thus shed light on our summary decision there and confirm that we did not, as the majority

suggests, foreclose an ineffectiveness claim based on pre-*John* conduct. Our holding in

*Rodriguez* that the record failed to establish counsel's ineffectiveness was based on the

assumption "that counsel failed to assert a meritorious Confrontation Clause challenge"

(31 NY3d at 1068). From that premise, we then concluded that "the alleged omission d[id]

not 'involve an issue that [was] so clear-cut and dispositive that no reasonable defense

counsel would have failed to assert it,' " (*Rodriguez*, 31 NY3d at 1068, quoting *McGee*, 20

NY3d at 518). As our memorandum decision and the record of that criminalist's testimony

suggest, the defendant's allegations of a meritorious confrontation claim may have been

exaggerated—based on the law at the time—and not clear-cut grounds for a defense

objection (*see id.*; *Rodriguez*, 153 AD3d at 239-247).[3] As we further noted, on that record,

defendant also failed to demonstrate " 'that the decision to forgo the contention could not

have been grounded in a legitimate trial strategy' " (*Rodriguez*, 31 NY3d at 1068, quoting

*McGee*, 20 NY3d at 518). Notably, the defendant in *Rodriguez* did not advance an

ineffective assistance of counsel claim at the Appellate Division, and made that claim for

the first time on appeal to our Court (*compare Rodriguez*, 153 AD3d at 235, *with id.*, 31

NY3d at 1067).

Defendant here presents a different case. Based on the record and the law at the time

of defendant's trial, the Confrontation Clause violation is plain, whereas in *Rodriguez* we

merely assumed arguendo that the defendant had a meritorious confrontation challenge

---

[3] In fact, the Appellate Division majority, after deeming the Confrontation Clause claim unpreserved, held that any such claim would have been futile anyway had defense counsel properly raised it (*see Rodriguez*, 153 AD3d at 238).

before concluding that defense counsel there was not ineffective for failing to raise it (31 NY3d at 1068). Defense counsel here did not object to the DNA evidence based on Ferrara's lack of involvement in the testing of the DNA evidence that was the core of the prosecution's case. In contrast, defense counsel in *Rodriguez* vigorously objected to the proffered evidence on what were essentially Confrontation Clause grounds (*see Rodriguez*, 153 AD3d at 239). Indeed, defense counsel there did not merely object, but also sought and eventually was granted access to the raw data to conduct independent DNA testing, the results of which may have informed counsel's decisions regarding the DNA evidence in that case.[4] In contrast, here, defense counsel's actions belie any reasonable trial strategy for failing to object to admission of the DNA evidence even though counsel based their arguments to the jury for discounting the DNA evidence on the very same grounds they could have raised to the judge for excluding that evidence (*see McGee*, 20 NY3d at 518).

IV.

The DNA evidence was the only direct link connecting defendant to the crime. Defense counsel understood as much and argued to the jury that this evidence should not be credited, in part, because it was presented by someone who did not conduct the tests. However, defense counsel could have and should have avoided creating this post-admission uphill battle by objecting to prevent its admission on confrontation grounds in the first instance, based on existing Supreme Court and state decisional law. This single failure had an outsized impact on the verdict because it allowed the prosecution to put the

---

[4] Indeed, Rodriguez's trial attorney "did not present any evidence at trial" (*Rodriguez*, 153 AD3d at 252 [Acosta, P.J., dissenting]).

most compelling evidence of defendant's guilt before the jury. Therefore, this error deprived defendant of effective assistance and, accordingly, requires reversal and a new trial.

       I dissent.

Order affirmed, in a memorandum. Chief Judge Wilson and Judges Garcia, Singas, Cannataro, Troutman and Halligan concur. Judge Rivera dissents in an opinion.

Decided November 21, 2023